**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Steven C. DERK, Appellee.**

Superior Court of Pennsylvania.

Argued May 2, 2006.

Filed Nov. 30, 2006.

Reargument Denied Jan. 29, 2007.

---

Gerald P. Morano, Office of the Attorney General, Harrisburg, for Com., appellant.

Edward J. Rymsza, Williamsport, for appellee.

BEFORE: KLEIN, BOWES, and McCAFFERY, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 Appellant, the Commonwealth of Pennsylvania ("Commonwealth"), appeals from the order of the Court of Common

Pleas of Snyder County granting the petition filed by Steven C. Derk ("Appellee") pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541–9546. The PCRA court determined that Appellee had received ineffective assistance of counsel when counsel failed to request that the trial court charge the jury with two instructions regarding the testimony of Tamie Gates, the principal witness for the Commonwealth.[1] Appellee was granted a new trial. After careful review of the certified record and applicable law, we conclude that the PCRA court erred when it granted Appellee relief under the PCRA. Accordingly, we vacate the order of the PCRA court and remand this matter for the court to consider those other issues raised by Appellee in his PCRA petition but not ruled upon below.

¶ 2 The relevant facts of this case were thoroughly set forth by our Supreme Court in a decision disposing of Appellee's direct appeal, which we quote, in part, as follows:

A jury convicted [Appellee] of, among other charges, first degree murder for the brutal beating death of a two-year-old child, Clair Hoyles, III ('little Clair'), the son of [Appellee's] live-in girlfriend, Tamie Gates (Gates). [Appellee] received a life sentence for this murder. Initially, both [Appellee] and Gates were charged with criminal homicide in the death of little Clair. However, Gates entered a negotiated plea agreement, by which she was permitted to plead guilty to the lesser offense[s] of involuntary manslaughter [and conspiracy to commit involuntary manslaughter] in exchange for her cooperation at [Appellee's] trial.

At the trial of [Appellee], the Commonwealth's most incriminating testimony of his guilt came from Gates. Gates testified to a course of violent conduct by [Appellee] toward little Clair, which escalated from July 1992 until little Clair's death on August 7, 1992. In particular, she related that [Appellee] smashed a roll of tape into the child's chest and, on the Monday before his death, smacked her son's head against the end of a couch. She also testified as to [Appellee's] abuse of her and ... his verbal threats[,] and statements that he was going to kill little Clair and 'kick his ass.' She further testified that at about 10:00 or 10:30 a.m. on August 6, 1992, the day before her son's death, she and [Appellee] fought about a past due light bill. During the fighting, little Clair began to cry and [Appellee] swore at the child and sent him to his room. Gates followed little Clair and began to play with him in his room. [Appellee] came to the doorway and continued to argue with Gates. When she refused to take immediate action on the bill, [Appellee] kicked little Clair. He then grabbed the boy by the head and threw the child, stomach down, on the bed[,] ... flipped him over and punched him in the stomach with a closed fist. Gates said she heard a cracking sound following the punch, and screamed at [Appellee] not to hit the child in that manner. [Appellee] responded, 'I don't care if I kill him or not, he's not my son.'

According to Gates, little Clair became ill in the evening of August 6, at about 11:00 p.m. and began vomiting throughout the night, and that both she and [Appellee] were up with the child....

1. These unrequested instructions were (1) that Gates's guilty plea could not be considered substantive evidence of Appellee's guilt, and (2) that Gates's purported "inconsistent statement" regarding Appellant's guilt could be considered substantive evidence of Appellee's innocence.

The child finally fell asleep about 8:30 a.m. on Friday, August 7, 1992 and Gates left little Clair on the couch and went to bed. At approximately 10:00 a.m. that same morning, Gates heard a thud and discovered the toddler lying with his head on the top of the stairs in the apartment. . . . Gates noticed that little Clair was cold to the touch. . . .

[Appellee] called 911 and the emergency dispatch sent an ambulance to the apartment. Gates testified that her concern for little Clair had finally overtaken her fear of [Appellee] so that she demanded medical treatment for the child. Gates told the technician that little Clair had fallen down the steps. When the paramedic arrived at the scene and inquired about how long the child had been unresponsive, Gates replied that little Clair had banged his head against the wall. Little Clair was transported to the Sunbury Hospital where he was pronounced dead.

At trial, the Commonwealth's forensic pathologist testified that little Clair sustained three areas of fatal injury: to his head, neck, and abdomen, which were inflicted at varying times before the child's death. His head injuries included linear skull fractures, epidural hemorrhaging, and brain herniation. The extent of the damage to the brain was consistent with the child having been dropped from a multistory building. The Commonwealth pathologist testified that brain herniation was probably the cause of death, and that the head injuries were inflicted twenty-four to forty-eight hours before death. He opined that blunt force trauma caused the head injuries.

The injury to little Clair's abdomen included blunt force trauma with damage to an abdominal artery and internal organs so severe that blood was in his abdomen. The pathologist testified that these injuries occurred twenty minutes to three hours before death. The injuries to the boy's neck area included evidence of manual strangulation, bleeding in the 'Adam's Apple' region and in front of the spinal column, consistent with 'shaking' baby syndrome. The child's neck ligaments were completely torn, presumably from repeated shaking. The injuries to the front of the neck occurred within days before death, and the injuries to the spinal column occurred within minutes to hours of death.

The pathologist recounted to the jury the child's multiple signs of blunt force trauma, manual strangulation and 'shaking baby syndrome,' with more than 100 distinct bruises covering his complete body. The child had bruises on his entire face, around both of his eyes and on his forehead. He had bruises around his arms, chest, abdomen, both lower legs, his back, and buttocks. The size and shape of the bruises on his back and buttocks indicated repeated blows with a fist, hand, foot, or toes. There also was a large bruise over the right side of his head covering the ear, forehead, and eye. The right eye was swollen shut. The Commonwealth showed the jury pictures of these injuries.

In addition to the testimony of Gates and the pathologist, the Commonwealth presented the testimony of several neighbors and acquaintances, who testified that they overheard [Appellee] verbally abuse the child, threaten to 'fucking kill him' and to 'smash little Clair against the wall.' One neighbor, Karen Treas, testified that she saw [Appellee] grab little Clair under the arm and back of the head, and while holding him by the hair, forcibly place him on a step in the apartment. Ms. Treas also testified that on the night of the murder, she

heard Gates say 'knock it off, leave him alone, that's enough.'

The Commonwealth also presented testimony that a number of witnesses, including Tamie Gates' mother, saw little Clair with bruises that never went away and that [Appellee] would make unbelievable excuses as to the nature of the bruises. Gates' mother testified that she became so concerned as to the bruises on the child that she had made an appointment to take the boy to the doctor just days before his death. (This appointment never materialized because Gates prevented her mother from seeing the child on the scheduled date.)

At trial, defense counsel argued that Gates, and not [Appellee], had committed the murder, pointing primarily to the time frames that the pathologist attributed to the child's injuries and the inconsistencies in Gates' testimony of events. Nonetheless, the jury convicted [Appellee] of the murder. Following his conviction and sentence, [Appellee] appealed to the Superior Court, which affirmed the trial court. [The Pennsylvania Supreme Court] granted review on the sole issue of whether defense counsel was ineffective for failing to request that the court instruct the jury that Ms. Gates was a 'corrupt' source since she was an accomplice to the murder.

*Commonwealth v. Derk*, 553 Pa. 325, 326–30, 719 A.2d 262, 263–4 (1998) (footnotes and citation to the record omitted).

¶ 3 Following its review, an evenly-divided Supreme Court affirmed. The Court's Opinion in Support of Affirmance concluded that a "corrupt source" or "accomplice" instruction regarding Gates's testimony was not appropriate under the evidence presented at trial because (1) the Commonwealth did not present evidence suggesting that Gates had actively participated with Appellee in the crimes perpetrated

against the victim, and (2) there was no evidence to suggest that Gates had solicited Appellee to commit the crimes. Further, as the Opinion noted, the strategy of the defense was to convince the jury that it was Gates alone and not Appellee who killed the victim, and thus a "corrupt source" or "accomplice" instruction would have been anomalous. *Id.* at 332–34, 719 A.2d at 266–67. Accordingly, the divided Court affirmed the conclusion reached by the trial court that Appellee's counsel had not been ineffective for having failed to request a "corrupt source" or "accomplice" instruction from the trial judge.

¶ 4 On July 13, 1999, Appellee filed a timely PCRA petition. In 2003, the PCRA court appointed present PCRA counsel to represent Appellee. PCRA counsel filed an amended PCRA petition on behalf of Appellee, alleging that trial counsel was ineffective for failing to (1) call Appellee to testify at trial; (2) discuss character witnesses with Appellee and call such witnesses to testify; (3) object to and move to strike the testimony of Gates's mother indicating or suggesting that Appellee had "confessed" to her that he had committed the crimes; (4) object to and move to strike the testimony of Gates's mother regarding her "suspicions" of Appellee's guilt; (5) request a lesser-included charge of involuntary manslaughter; (6) request an inconsistent statement charge regarding Gates's testimony; (7) request a cautionary instruction advising the jury that it could not consider Gates's guilty plea as substantive evidence against Appellee; (8) request a corrupt source charge; (9) object to certain allegedly improper remarks made by the prosecution during its closing argument; and (10) object to the prosecution's alleged untimely disclosure of a witness and the admission of this witness's testimony. (Appellee's Amended Petition for Post–Conviction Collateral Relief, dat-

ed April 29, 2004, at 3–5). Appellee also alleged that his appellate counsel had been ineffective because he had failed to raise on direct appeal the aforesaid ten claims of trial counsel ineffectiveness. (*Id.* at 5).

¶ 5 At the PCRA hearing, the court heard testimony regarding trial counsel's failure to request certain jury instructions as to Gates's testimony. Specifically, trial counsel was questioned about his failure to request a cautionary instruction regarding Gates's agreement with the Commonwealth to plead guilty to involuntary manslaughter and, especially, conspiracy to commit involuntary manslaughter. During the course of her testimony at Appellee's trial, Gates testified that prior to the trial, she had entered a negotiated plea agreement with the Commonwealth, the terms of which provided that she would be permitted to enter pleas of guilty to the lesser charges of involuntary manslaughter and conspiracy to commit involuntary manslaughter in exchange for her testimony against Appellee. Gates was also cross-examined regarding this agreement. Trial counsel testified at the PCRA hearing that neither he nor his co-counsel had requested a charge cautioning the jury against considering Gates's plea agreement as evidence of Appellee's guilt. Trial counsel also testified that he did not have a basis for having failed to request this instruction. (Notes of Testimony ("N.T.") PCRA Hearing, 7/8/04, at 45, 48; R.R. at 1013a, 1016a).

¶ 6 Trial counsel was also questioned about his failure to request an instruction regarding a pretrial statement made by Gates that was purportedly inconsistent with her trial testimony. This statement was made in a letter written by Gates to Appellee's mother. Although the letter was not introduced into the record, Gates read from part of the letter during her testimony as follows: "[M]ake sure you tell [Ap-

pellee] that don't plan on . . . lieing [sic] on saying he did this when he didn't." (N.T. Trial, 9/16/93, at 184–86; R.R. at 642a–44a). Trial counsel testified at the PCRA hearing that neither he nor his co-counsel had requested a charge instructing the jury to consider Gates's purportedly "inconsistent statement" as evidence of Appellee's innocence. Trial counsel also testified that he did not have a basis for having failed to request this instruction. (N.T. PCRA Hearing, at 51–52; R.R. at 1019a–20a).

¶ 7 The PCRA court determined on the basis of the above-recited evidence, and on its analysis of the relevant law, that Appellee had proven that a new trial was mandated because trial counsel had failed to request cautionary instructions advising the jury that it (1) could not consider Gates's guilty plea as substantive evidence of Appellee's guilt, and (2) could consider a purportedly inconsistent statement made by Gates to be substantive evidence of Appellee's innocence. The PCRA court determined that the evidence that Gates had agreed to plead guilty to *conspiracy* to commit involuntary manslaughter was highly prejudicial to Appellee's defense, as the other evidence showed that Gates and Appellee were the only individuals in the company of the victim during the time when the fatal blows were likely delivered. Thus, the court concluded that a cautionary instruction regarding evidence of Gates's plea agreement was mandated. The PCRA court also determined that Appellee was entitled to an instruction emphasizing that Gates's purportedly inconsistent statement could serve as substantive evidence of Appellee's innocence. The court therefore concluded that counsel's failure to have asked for these jury instructions amounted to ineffective assistance. The PCRA court further concluded that because Gates's testimony was critical to a successful prosecution of Ap-

pellee, as Gates was the sole eyewitness to the events leading to the victim's death, counsel's failure to request these two specific jury instructions regarding Gates's testimony had not been a harmless omission.[2] For these reasons, the PCRA court granted Appellee's PCRA petition and ordered a new trial.[3]

¶ 8 The Commonwealth filed a timely appeal in which it presents the following two questions for our review:

I. Whether the PCRA court erred in finding that trial counsel was ineffective in failing to request a 'guilt by association' jury instruction regarding co[-]defendant's [sic] guilty plea.

II. Whether the PCRA court erred in finding counsel to be ineffective for failing to request a prior inconsistent statement jury instruction under *Commonwealth v. Lively* and that counsel's omission constituted prejudice.

(Commonwealth's Brief at 4).

■■■ ¶ 9 In reviewing a PCRA court's order granting post-conviction relief due to trial counsel's ineffectiveness, we must determine whether the court's ruling is supported by the record and free from legal error. The PCRA court's factual determinations are entitled to deference, but its legal determinations are subject to our plenary review. *Commonwealth v. Hawkins*, 586 Pa. 366, 379–80, 894 A.2d 716, 724 (2006). Further, in order to establish ineffective assistance of counsel, a petition-

er must demonstrate that (1) his or her underlying claims have arguable merit; (2) counsel had no reasonable basis for the action or inaction complained of; and (3) counsel's action or inaction prejudiced the petitioner. *Id.* at 374–75, 894 A.2d at 721. Relief on a claim of ineffectiveness of counsel is warranted only where "trial counsel's error or omission [has] so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place." *Id.* at 376, 894 A.2d at 722 (quotation and citations omitted).

¶ 10 Pertinent to our inquiry here is the requirement set forth at 42 Pa.C.S.A. § 9543(a)(3) that a PCRA petitioner may not allege errors that have been "previously litigated" or waived. For purposes of Section 9543(a)(3), "an issue has been previously litigated if ... the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S.A. § 9544(a)(2). Our review of the PCRA court's order in the instant case thus must begin with an examination of whether the claims upon which the PCRA court granted relief were claims separate from those that had been previously litigated by Appellee. If they are not, then our inquiry ends and Appellee is not entitled to relief. 42 Pa.C.S.A. § 9543(a)(3).

¶ 11 On direct appeal, Appellee litigated the issue of trial counsel's ineffectiveness based on counsel's failure to request a

---

2. The PCRA court did not engage in an analysis as to whether Appellee's trial counsel had a reasonable strategy or basis not to request these particular jury instructions. However, the transcript of the PCRA hearing shows that trial counsel testified that he did not have a basis for failing to request these instructions. (N.T. PCRA Hearing, at 45, 48, 51–52; R.R. at 1013a, 1016a, 1019a–20a).

3. In its decision, the PCRA court also reviewed—and rejected—Appellee's arguments that trial counsel had been ineffective for fail-

ing to request the trial court to instruct the jury regarding the elements of involuntary manslaughter and regarding Gates's testimony as coming from a "corrupt source." However, because the PCRA court determined that PCRA relief was warranted on the grounds that trial counsel had failed to request the jury instructions discussed in the body of this opinion, the court declined to address the other issues which Appellee raised in his amended PCRA petition as moot.

cautionary jury instruction concerning Gates's testimony. More specifically, Appellee argued that trial counsel had provided ineffective assistance by failing to request a jury instruction regarding Gates's testimony as coming from a "corrupt source." This Court reviewed and disposed of that issue and an evenly-divided Supreme Court affirmed.[4]

¶ 12 Subsequently, Appellee obtained PCRA relief based on findings that trial counsel was ineffective for having failed to request cautionary jury instructions concerning Gates's testimony. Thus, Appellee has sought and received collateral relief on what appears to be essentially the same general ground raised and rejected on direct appeal, namely, whether trial counsel was ineffective for having failed to request necessary jury instructions from the trial court. Therefore, the question before us is whether the claims for which Appellee received PCRA relief are "issues" separate and apart from the issue previously litigated on direct appeal, or whether the PCRA claims are simply different "theories" supporting the previously-litigated issue of whether trial counsel was ineffective for having failed to request necessary jury instructions from the trial court.

¶ 13 As our Supreme Court noted, "the relevant statutory inquiry is the term 'issue.'" *Commonwealth v. Collins*, 585 Pa. 45, 55, 888 A.2d 564, 570 (2005). With regard to this inquiry, the Court instructed as follows:

> There is nothing in [42 Pa.C.S.A. § 9544(a)(2)] defining 'issue'. That term, as used in 'pleading and practice,' is understood to mean 'a single, certain, and material point, deduced by the allegations and pleadings of the parties, which is affirmed on the one side and denied on the other.' BLACK'S LAW DICTIONARY, 6th ed. 831. Thus, 'issue' refers to the discrete legal ground that was forwarded on direct appeal and would have entitled the defendant to relief. *See, e.g., Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) (defining 'grounds' as 'a sufficient legal basis for granting the relief sought by the applicant'). ***The theories or allegations in support of the ground are simply a subset of the issue presented. Stated another way, there can be many theories or allegations in support of a single issue,*** but ultimately, § 9544(a)(2) refers to the discrete legal ground raised and decided on direct review. ***Thus, at the most basic level, this section prevents the relitigation of the same legal ground under alternative theories or allegations.*** *See, e.g., Commonwealth v. Wilson*, 452 Pa. 376, 305 A.2d 9 (1973) (concluding that a new theory in support of the same claim of trial counsel ineffectiveness was unavailing since the claim was decided adversely to petitioner in his previous direct appeal); *Commonwealth v. Slavik*, 449 Pa. 424, 297 A.2d 920 (1972) ('A defendant is not entitled to relitigate the validity of his plea every time he offers a new theory or argument which he had not previously advanced.').

*Id.* at 55–56, 888 A.2d at 570 (footnote omitted; emphases supplied).

¶ 14 In *Slavik, supra,* our Supreme Court held that a challenge to the validity of a guilty plea constitutes a distinct legal "ground." Thus, it held that an argument

---

4. As Appellee had no right of appeal to the Supreme Court from this Court's disposition of his direct appeal, those issues raised on direct appeal were "previously litigated" as their merits had been ruled upon by the highest appellate court in which the petitioner could have had review as a matter of right. *See* 42 Pa.C.S.A. § 5105(b) (providing that "there shall be no right of appeal from the Superior Court").

on direct appeal alleging that the plea was invalid because it was based on an involuntary confession, and an argument on collateral review that the plea was invalid because the defendant had, during the plea colloquy, asserted facts suggesting his innocence, were simply different "theories" in support of one distinct legal ground, namely, a challenge to the validity of a guilty plea. *Id.* at 427–32, 297 A.2d at 922–24. In *Wilson, supra,* our Supreme Court held that when, on direct appeal, the Court had "reviewed the record and ruled that the appellant had received competent assistance of counsel rendered by an experienced trial lawyer," the appellant could not raise on collateral review a new theory of ineffectiveness of trial counsel. *Id.* at 378–79, 305 A.2d at 10–11.[5]

¶ 15 In the present case, Appellee alleged on direct appeal that trial counsel was ineffective for having failed to request a purportedly necessary jury instruction. The theory supporting this claim was that counsel had failed to request a charge regarding a "corrupt source." In his present PCRA petition, Appellant has alleged several more theories of ineffectiveness of trial counsel for having failed to request certain jury instructions from the trial court. However, the allegation that trial counsel was ineffective for having failed to request a jury charge regarding, for example, an "inconsistent statement" made by an adverse witness, is nothing more than a *theory* supporting the discrete legal ground alleging that ineffective assistance of counsel had been rendered for failure to request a necessary jury charge. Thus, pursuant to *Collins* and its antecedents, the two claims for which Appellee received relief under the PCRA were simply alternative theories in support of one discrete legal ground. Because this discrete legal ground was previously litigated on direct appeal, the issue cannot be, and should not have been, revisited on collateral review, where, with respect to the issues now on appeal, no more than different *theories* challenging the effectiveness of either trial counsel or appellate counsel were offered as a basis for relief. Therefore, we determine that the PCRA court's grant of a new trial was in error.[6]

---

5. *Wilson,* however, does not stand for the proposition that ineffectiveness of counsel is itself a distinct legal ground for relief, with every specific allegation of ineffectiveness being mere theories of this ground. Rather, *Wilson* involved the unusual circumstance where the direct appeal resulted in a review of the record to determine whether the appellant had received competent assistance of trial counsel. However, where a direct appeal results in the disposition of specific issues involving alleged incompetence of counsel, without an overall review of counsel's representation, the appellant may raise on collateral review different issues involving alleged incompetence of counsel. *Commonwealth v. Ramsey,* 300 Pa.Super. 515, 446 A.2d 974, 975 n. 2 (1982). *Cf., Commonwealth v. McNeal,* 479 Pa. 112, 387 A.2d 860 (1978) (in which, on collateral review, three allegations of ineffectiveness were determined to have been previously litigated on direct appeal, but four other allegations of ineffectiveness were reviewed on the merits). However, because of the Supreme Court's ruling in *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002) (holding prospectively that claims of ineffectiveness of counsel must normally wait until collateral review), it will be only the rare circumstance where ineffectiveness claims are raised on direct appeal.

6. We note that the holding of *Collins* does not support a contrary result. In *Collins,* the Court held that an ineffective assistance of counsel claim is a separate legal issue distinct from the underlying substantive claim for which counsel allegedly had provided ineffective assistance. *Id.* at 61, 888 A.2d at 573. In so holding, the Court rejected a prior line of cases holding that claims of counsel ineffectiveness were, in relevant circumstances, deemed to be nothing more than alternative theories in support of the underlying substantive issues which had been previously litigated. *See id.* at 57–58, 888 A.2d at 571. The

¶16 For the reasons stated above, and after careful review, we hold that the PCRA court erred by granting Appellee a new trial. Accordingly, we vacate the PCRA court's order, and remand this matter to consider those claims made by Appellee on collateral review which were not ruled upon by the court below.

¶17 Order vacated. Case remanded. Jurisdiction relinquished.

¶18 BOWES, J. files a Concurring Opinion.

## CONCURRING OPINION BY BOWES, J.:

¶1 On September 20, 1993, Appellee, Steven C. Derk, was found guilty by a jury of first degree murder and related charges in connection with the beating death of two-year-old Clair Hoyles, III, who was the son of Appellee's girlfriend, Tamie Gates. Gates was charged as a co-defendant in Clair's death, and in exchange for her cooperation at Appellee's trial, the Commonwealth agreed to allow her to plead guilty to conspiracy and involuntary manslaughter.[7]

¶2 Appellee moved in with Gates and Clair, who was Gates's son with another man, in late May or early June 1992. They lived in a row of townhouses that were in close proximity to each other. There were independent witnesses, including neighbors and a friend, who heard Appellee berate and threaten to beat and even to kill the child. These witnesses also established that after Appellee moved in with Clair, Clair consistently began to display signs of physical abuse, including bruises and swelling. The child had never shown evidence of physical abuse before Appellee moved in with him.

¶3 Gates testified that she witnessed but failed to stop a beating that her son suffered at Appellee's hands on August 6, 1992. At trial, she described this beating, which was confirmed by a graphic and disturbing autopsy report establishing that Clair displayed evidence of sustained and horrific physical abuse. Gates then failed to secure medical treatment for Clair, who died the following day. Appellee confessed to Gates's mother that he killed the child. An independent witness, Giovani Trevor, who was Appellee's neighbor, testified that about two to three weeks after the murder, he saw Appellee knocking on Gates's door and overheard Appellee state, "[L]et me in or you're next." N.T., 9/17/93, at 262.

¶4 Appellee was sentenced to life imprisonment. On appeal, we affirmed the judgment of sentence and rejected numerous allegations of trial counsel's ineffectiveness, including a claim that counsel should have asked for an instruction that Gates be considered a corrupt source as an accomplice to the crime. *Commonwealth v. Derk*, 454 Pa.Super. 678, 685 A.2d 207 (1996). On March 17, 1997, our Supreme Court granted limited review "to determine[e] whether to remand to the Court of Common Pleas of Snyder County for an evidentiary hearing to decide whether trial counsel were ineffective for failing to re-

Court held that, thenceforth, ineffectiveness claims should be recognized as distinct issues to be reviewed under the well-established, three-prong ineffectiveness standard. *Id.* at 61, 888 A.2d at 573. The Court noted, however, that the *exception* to the Court's ruling "would occur if a claim of ineffectiveness was raised on direct appeal and a claimant seeks to raise the same claim of ineffectiveness on

collateral review." *Id.* at 61 n. 11, 888 A.2d at 573 n. 11. That circumstance mirrors precisely the one in the case *sub judice*.

7. Following Appellee's trial, Gates's plea agreement was rejected by the trial court, and she was convicted at a jury trial of third degree murder, aggravated assault, and endangering the welfare of children.

quest a corrupt source jury instruction." *Commonwealth v. Derk*, 547 Pa. 349, 690 A.2d 231 (1997). The Court subsequently issued a *per curiam* order wherein the evenly-divided Court affirmed. *Commonwealth v. Derk*, 553 Pa. 325, 719 A.2d 262 (1998). The Supreme Court concluded that since Appellee's entire trial strategy was devoted to accusing Gates of committing the crime alone, it would have been inconsistent to ask for the corrupt source instruction thereby implying that Gates participated in the crime as an accomplice.

¶ 5 Appellee thereafter filed a timely PCRA petition. Counsel was appointed, and after a hearing on July 8, 2004, the PCRA court issued an order on June 2, 2005, granting Appellee a new trial. The court determined that trial counsel was ineffective for (1) neglecting to request a jury instruction that Appellee should not be considered guilty in light of Gates's guilty plea to conspiracy; and (2) for not seeking a jury instruction that a prior statement made by Gates be considered as substantive evidence.[8]

¶ 6 The majority concludes that these issues should be considered previously litigated under the PCRA since Appellee challenged on direct appeal trial counsel's failure to ask for a corrupt source jury instruction as to Gates's testimony. I must respectfully disagree with my learned colleagues.

¶ 7 I certainly agree that a PCRA petitioner cannot obtain PCRA relief on the basis of an issue that has been previously litigated. Section 9544(a)(2) of the PCRA states in relevant part that "an issue has been previously litigated if . . . the highest court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." In *Commonwealth v. Collins*, 585 Pa. 45, 888 A.2d 564

(2005), our Supreme Court observed that the term "issue" is not defined in the PCRA and proceeded to define it, thusly:

That term, as used in "pleading and practice," is understood to mean "a single, certain, and material point, deduced by the allegations and pleadings of the parties, which is affirmed on the one side and denied on the other." Black's Law Dictionary, 6th ed. 831. Thus, "issue" refers to the discrete legal ground that was forwarded on direct appeal and would have entitled the defendant to relief. *See, e.g., Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) (defining "grounds" as "a sufficient legal basis for granting the relief sought by the applicant"). The theories or allegations in support of the ground are simply a subset of the issue presented. Stated another way, there can be many theories or allegations in support of a single issue, but ultimately, § 9544(a)(2) refers to the discrete legal ground raised and decided on direct review. Thus, at the most basic level, this section prevents the relitigation of the same legal ground under alternative theories or allegations.

*Id.* at 55–56, 888 A.2d at 570 (footnote omitted).

¶ 8 In analyzing whether trial counsel was ineffective for failing to ask for a corrupt source accomplice instruction as to Gates's testimony, the Supreme Court ruled that such an instruction was internally inconsistent with trial counsel's strategy of placing sole blame for the baby's death on Gates. Specifically, at trial, counsel argued that Appellee was completely innocent and that Gates alone killed Clair and was lying when she implicated Appellee. The Supreme Court ruled that "an accomplice instruction would have been inconsis-

---

8. In the statement, Gates implied that Appellee did not kill Clair.

tent with [Appellee's] defense that he did not kill the child, and **it was a reasonable tactical consideration for trial counsel not to request an accomplice jury instruction.**" *Derk, supra* at 333, 719 A.2d at 266 (emphasis added).

¶ 9 However, the present issue is whether counsel should have asked the jury to be instructed not to consider Gates's guilty plea as evidence of Appellee's guilt. This instruction is given when there is a concern that the jury may find the defendant "guilty by association" with a co-defendant who entered a guilty plea and then testifies against the defendant. *See Commonwealth v. Geho,* 223 Pa.Super. 525, 302 A.2d 463, 466 (1973). The "guilty by association" instruction is a completely different instruction impacting on a separate concern.

¶ 10 As noted, in this case, the trial strategy was to separate and avoid reference to Gates as an accomplice or co-conspirator. Her guilty plea to conspiracy implied that Appellee was a conspirator, and the instruction not to view it as implicating Appellee would have bolstered Appellee's defense by ensuring that the jury did not view Gates's guilty plea to conspiracy as negating his argument that Gates acted alone. The present issue before us was not an issue decided by the Supreme Court, nor could it be considered a different theory supporting the same issue. The instruction asking that her guilty plea not be considered as evidence of Appellee's guilt is essentially the polar opposite of the instruction that Gates's testimony be viewed as emanating from an accomplice and, thus, a corrupt source since the former supports the defense strategy while the latter undermines it.

¶ 11 Similarly, I disagree with the majority's conclusion regarding the previous litigation of counsel's ineffectiveness for not asking for the instruction as to Gates's prior statement. The evidentiary impact of the prior inconsistent statement and whether the jury should have been instructed on its evidentiary value was not a point presented on direct appeal. It is a discrete legal question that cannot be understood as an alternative theory of relief involving the same question as the corrupt source instruction.

¶ 12 While I disagree that these questions were previously litigated, I do agree with the majority that the PCRA court erred in granting a new trial. To establish entitlement to a new trial based on an allegation of ineffectiveness of trial counsel, a PCRA petitioner must establish:

"(1) that the claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and, (3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." *Commonwealth v. Kimball,* 555 Pa. 299, 724 A.2d 326, 333 (1999). The failure to satisfy any prong of this test will cause the entire claim to fail. *See Commonwealth v. Bridges,* 584 Pa. 589, 886 A.2d 1127, 1131 (2005). Finally, "counsel is presumed to be effective and [the defendant] has the burden of proving otherwise." *Commonwealth v. Pond,* 846 A.2d 699, 708 (Pa.Super.2004).

*Commonwealth v. Bath,* 2006 PA Super 235, ¶ 7, 907 A.2d 619.

¶ 13 In the present case, Gates's testimony was corroborated by other **overwhelming** evidence of Appellee's guilt. Appellee made a statement admitting that he killed the child that was overheard by an independent witness. Independent witnesses established that Appellee started to beat the child soon after moving in with him, one witness actually saw an assault on the two-year-old, and other witnessed heard Appellee threatened to beat and

even to kill the child. Appellee confessed to Gates's mother. In my view, there is no reasonable probability that an instruction not to view Gates's guilty plea as evidence of Appellee's guilt would have changed the verdict at trial.

¶ 14 My conclusion is the same regarding the charge on the prior inconsistent statement. The jury was presented with evidence that Gates made a prior inconsistent statement suggesting that Appellee was innocent. Appellee maintained that trial counsel should have asked that the jury be informed this statement could be considered as substantive evidence. Meanwhile, there is no reason to believe that the jury would **fail** to consider this statement, along with the other evidence it received, as substantive evidence. Indeed, it is necessary to inform the jury of the converse: if a prior inconsistent statement is introduced but cannot be considered as substantive evidence, the jury must be instructed **not** to consider that statement as evidence. *See generally Commonwealth v. Lively,* 530 Pa. 464, 610 A.2d 7 (1992); *Commonwealth v. Brady,* 510 Pa. 123, 507 A.2d 66 (1986). In my view, it was unnecessary for the jury to be instructed to do something that it already does, *i.e.,* consider all the evidence presented as substantive evidence.

¶ 15 For the above reasons, I would vacate the order of the PCRA court, and remand for consideration of the remaining issues raised by Appellee.