J-S28003-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CLARENCE A. BENDER | : | |
| | : | |
| Appellant | : | No. 1278 MDA 2017 |

Appeal from the PCRA Order July 25, 2017
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0000287-2012

BEFORE:  OLSON, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                          **FILED JULY 27, 2018**

Appellant, Clarence A. Bender, appeals *pro se* from the order entered on July 25, 2016, dismissing his petition filed under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. § 9541-9546.  We affirm.

The trial court ably explained the underlying facts of this case:

> Ms. [Tiffany Daniels'] testimony is summarized as follows[.] Ms. Daniels and [Victor Pearson (hereinafter "the Victim")] were engaged at the time of the shooting.  The Victim aspired to become a rapper, posted videos of himself rapping on YouTube, and performed at clubs and events.  The Victim had a reputation as being involved in the hip-hop scene and he maintained a public image as being affluent.
>
> On December 3, 2011, Ms. Daniels and the Victim went to the Derry Street Cafe ("Cafe"), left, went to another bar, and then returned to the Cafe at approximately 12:15 a.m. on December 4, 2011. Ms. Daniels was intoxicated by the end of the night.  Although Ms. Daniels was familiar with Appellant and [Brandon Ruiz (hereinafter "Co-Defendant Ruiz")], she did not see either individual or [Appellant's friend, Tyrell]

Weaver at the Cafe. Ms. Daniels and the Victim left the Cafe at closing time, which was approximately 1:30 a.m.

In the parking lot, the Victim tried to maneuver his and Ms. [Daniels'] car out of its spot, but it was blocked by another vehicle. The Victim exited his vehicle and asked a nearby individual if he knew who owned the vehicle, but the individual did not respond. The Victim turned and lifted his right leg, at which point Appellant grabbed the Victim from behind and demanded that he "give that shit up." Appellant grabbed the Victim by the neck with his left arm and, with his right hand, held a chrome semiautomatic gun against the right side of the Victim's neck. When Ms. Daniels heard Appellant threaten the Victim, she bent down to look out of the open driver's side doorway.

The Victim reached for his gun as he was attacked. As Appellant and the Victim tussled, [Co-Defendant Ruiz], who was unarmed, patted down the Victim. Ms. Daniels heard a gunshot, exited the vehicle, and found the Victim lying face-up in a pool of blood. One of the chains the Victim had that night was missing after the shooting. Ms. Daniels asserted in her testimony that Appellant shot the Victim.

[John] Sanks[, head of security at the Cafe,] testified that the Victim and Ms. Daniels were frequent patrons of the Cafe. Mr. Sanks testified that he was familiar with Appellant and [Co-Defendant Ruiz], and that the two men arrived around midnight on December 4, 2011. According to Mr. [Sanks'] testimony, he patted down both Appellant and [Co-Defendant Ruiz], but found no contraband. Mr. Sanks testified that he did not witness Appellant or [Co-Defendant Ruiz] interacting with Ms. Daniels or the Victim that night.

Mr. Sanks testified that Ms. Daniels and the Victim left the Cafe, that Appellant, [Christopher] Diggs, and Mr. Weaver left the bar a few minutes later, and that [Co-Defendant Ruiz] walked out afterwards. Mr. Sanks testified that, upon hearing a gunshot outside, he looked across the street and saw Appellant, [Co-Defendant Ruiz], the Victim and Ms. Daniels in the area where the shot came from; Mr. Sanks then watched [Co-Defendant Ruiz] and Appellant cross Derry Street to return to the SUV. According to Mr. [Sanks'] testimony, Appellant ran away from the scene first. Mr.

Sanks testified that [Co-Defendant Ruiz] and Appellant got into the SUV and, after a moment, the SUV drove westward down Derry Street.

. . .

According to [Harrisburg Police Detective Christopher Krokos,] following an interview on December 4, 2011, [Co-Defendant Ruiz] provided him with a statement that essentially claimed that Appellant and [Co-Defendant Ruiz] approached the Victim to assist him in maneuvering his vehicle, but Appellant shot the Victim and took two of the Victim's chains. Detective Krokos testified that, following an interview on January 3, 2012, Appellant provided a statement that asserted that [Co-Defendant Ruiz] was fighting with the Victim in the parking lot, Appellant approached the two in order to stop the fight, but [Co-Defendant Ruiz] shot the Victim. Detective Krokos testified that the surveillance video from the Cafe established Mr. Diggs, Mr. Weaver, and Appellant arrived at the Café together, and that [Co-Defendant Ruiz] met them at the bar. Detective Krokos testified that the surveillance video from the Cafe established that Appellant walked up directly behind the Victim when the gunshot was fired.

Trial Court Opinion, 2/15/13, at 4-6 and 15 (internal footnotes omitted).

The jury found Appellant guilty of second-degree murder and robbery and, on November 5, 2012, the trial court sentenced Appellant to serve a term of life in prison for the murder conviction and a concurrent term of ten to 20 years in prison for the robbery conviction. **See Commonwealth v. Bender**, 96 A.3d 1093 (Pa. Super. 2014) (unpublished memorandum) at 3, *appeal denied*, 99 A.3d 75 (Pa. 2014).

On January 27, 2014, this Court affirmed Appellant's judgment of sentence in part and vacated the judgment of sentence in part.[1] Specifically, we vacated Appellant's sentence for robbery (as robbery was the predicate felony for Appellant's second-degree murder conviction), but affirmed the remainder of Appellant's judgment of sentence. *Id.* at 11. Moreover, since Appellant received a concurrent term of imprisonment for the robbery conviction, we did not remand for resentencing. *Id.*; *see*, *e.g.*, ***Commonwealth v. Robinson***, 817 A.2d 1153, 1163 n. 14 (Pa. Super. 2003) (holding: "our disposition does not upset the [trial] court's sentencing scheme as the sentence we reverse here had been ordered to run concurrent to the sentence imposed on [another] conviction. Under these circumstances, there is no need to remand for resentencing"). The Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on August 29, 2014. ***Commonwealth v. Bender***, 96 A.3d 1093 (Pa. Super. 2014) (unpublished memorandum) at 3, *appeal denied*, 99 A.3d 75 (Pa. 2014).

Appellant filed a timely, *pro se* PCRA petition on April 27, 2015. **See** Appellant's *Pro Se* PCRA Petition, at 3. As the PCRA court explained:

> [Appellant] raised a myriad of issues in his [*pro se* petition]. These issues include an ineffective assistance of counsel claim for failure to test the knowledge of lead Detective Krokos and his affidavit for probable cause, an ineffectiveness claim for failure to request a [***Commonwealth v. Hall***, 302 A.2d 342 (Pa. 1973)] hearing, failure to object to Ms. [Daniels' alleged] false testimony, failure to object to [Co-

---

[1] Our decision followed the *nunc pro tunc* restoration of Appellant's direct appeal rights.

Defendant] Brandon [Ruiz's alleged] false testimony, and failure to object to the prosecutor's closing argument. Additionally, [Appellant raised] prosecutorial misconduct [and **Brady v. Maryland**, 373 U.S. 83 (1963) claims].

PCRA Court Opinion, 9/23/16, at 2.

The PCRA court appointed counsel to represent Appellant during the proceedings. **See** PCRA Court Order, 6/3/15 at 1; PCRA Court Order, 6/23/15 at 1; PCRA Court Order, 10/15/15, at 1. Nevertheless, on April 29, 2016, appointed counsel filed a no-merit letter and a request to withdraw as counsel, pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

After reviewing counsel's **Turner**/**Finley** letter, the PCRA court notified Appellant that it intended to dismiss the PCRA petition in 20 days, without holding a hearing. **See** PCRA Court Order, 9/23/16, at 1; Pa.R.Crim.P. 907(1). Appellant responded to the PCRA court's notice of intent to dismiss and raised a number of additional claims for relief, including: 1) the jury's inconsistent verdict "demonstrat[es] that [Appellant] did not receive a fair trial;" 2) trial counsel was ineffective for failing to object to the prosecutor's closing statement; and, 3) the Commonwealth committed a **Brady** violation because "the surveillance video described by the detective at trial and in written materials does not match the surveillance video shown at trial." Appellant's Response to Rule 907 Notice, 11/7/16, at 1-6.

On June 8, 2017, the PCRA court again notified Appellant that it intended to dismiss his petition in 20 days, without holding a hearing. PCRA Court Order, 6/8/17, at 1. Appellant did not file a further response and, on July 25,

2017, the PCRA court finally dismissed Appellant's petition. PCRA Court Order, 7/25/17, at 1. The PCRA court then granted counsel's petition to withdraw on August 14, 2017. PCRA Court Order, 8/14/17, at 1.

Appellant filed a timely notice of appeal. He raises ten issues to this Court:[2]

> 1. Did the PCRA court err when it ruled [Appellant's] issues as previously litigated and waived under 42 Pa.C.S.A. § 9544(b) when [Appellant] brought his claims under ineffective assistance of counsel and other constitutional violations pursuant to the . . . Constitution?
>
> 2. Did the [PCRA] court err when it dismissed [Appellant's PCRA petition] claiming that trial counsel was ineffective for not requesting a suppression hearing, thereby violating [Appellant's constitutional rights]?
>
> 3. Did the PCRA court err by denying [Appellant] relief for not conducting a post-trial evidentiary hearing under [***Franks v. Delaware***, 438 U.S. 154 (1978)], thereby denying his rights under the . . . Constitution, when [Appellant] proved by more than a preponderance of the evidence that lead Detective [] Krokos, knowingly presented false statements in his affidavit of probable cause for the arrest warrant, and without those false statements there would have been insufficient probable cause to arrest?
>
> 4. Did the PCRA court err when it dismissed Appellant's PCRA[] claim that trial counsel was ineffective when he failed to object to the prosecutor's use of false testimony from its star witness when such false testimony rose to the level of prosecutorial misconduct?
>
> 5. Did the PCRA court err when it denied Appellant's PCRA claim that the prosecutor knew before trial that he was going to present false testimony from his star witness during trial,

_____

[2] For ease of discussion, we have re-numbered Appellant's claims on appeal.

thereby violating [Appellant's] rights under the . . . Constitution?

6. Did the PCRA court err by dismissing Appellant's PCRA claim that counsel . . . was ineffective for not finding trial counsel . . . ineffective for not objecting to false testimony?

7. Did the PCRA court err in denying Appellant relief under the . . . Constitution when it was demonstrated that the attorney for the Commonwealth . . . made a *prima facie* case that [Appellant] was the person who shot and killed [the Victim,] solely based on the Commonwealth's star witness, Tiffany Daniels[,] on January 17, 2012, given that on August 20, 2012, at docket number 2230 MDA 2012, the attorney for the Commonwealth . . . finally conceded that [Co-Defendant] Brandon Ruiz shot the Victim?

8. Did the PCRA court err in not granting PCRA relief when trial counsel failed to object to the prosecutor's closing statements wherein he vouched for the truth of the Commonwealth's [witness'] testimony he knew was false?

9. Did the PCRA court err in not granting relief where trial counsel failed to investigate pretrial evidence, *i.e.* video footage that shows his client was away from the scene when the fatal shot was fired?

10. Did the PCRA court err in denying Appellant PCRA relief when trial counsel failed to object to flawed jury instructions because they were flawed as a matter of law?

Appellant's Brief at 2-4 (some internal capitalization omitted).

"We review a ruling by the PCRA court to determine whether it is supported by the record and is free of legal error. Our standard of review of a PCRA court's legal conclusions is *de novo*." **Commonwealth v. Cousar**, 154 A.3d 287, 296 (Pa. 2017) (internal citations omitted).

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence

resulted from "one or more" of the seven, specifically enumerated circumstances listed in 42 Pa.C.S.A. § 9543(a)(2). One of these statutorily enumerated circumstances is the "[i]neffectiveness of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

Counsel is, however, presumed to be effective and "the burden of demonstrating ineffectiveness rests on [A]ppellant." **Commonwealth v. Rivera**, 10 A.3d 1276, 1279 (Pa. Super. 2010). To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that:

> (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different.

**Commonwealth v. Fulton**, 830 A.2d 567, 572 (Pa. 2003). As this Court has explained:

> A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. **See Commonwealth v. Jones**, 876 A.2d 380, 385 (Pa. 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim . . . , he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of

- 8 -

success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (some internal quotations and citations omitted). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Id.*

Finally, a PCRA petitioner is not automatically entitled to an evidentiary hearing on his petition. A PCRA petition may be dismissed without a hearing if the PCRA court "is satisfied from [its review of the petition] that there are no genuine issues concerning any material fact and that the [petitioner] is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings." Pa.R.Crim.P. 907(1). However, when the PCRA petition raises material issues of fact, the PCRA court "shall order a hearing." Pa.R.Crim.P. 908(A)(2). Thus, "[t]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Commonwealth v. Paddy*, 15 A.3d 431, 442 (Pa. 2011) (internal quotations and citations omitted).

First, Appellant claims that the PCRA court erred in its September 23, 2016 memorandum opinion, when the PCRA concluded that Appellant's petition "raises several claims that were addressed by the Pennsylvania Superior Court on direct appeal and are therefore waived as claims that [were] previously litigated." PCRA Court Opinion, 9/23/16, at 3. Appellant argues that his claims have not been previously litigated or waived, as they are ineffective assistance of counsel claims or are otherwise cognizable under the PCRA – and the first time he could have raised the claims was in his current PCRA petition. *See* Appellant's Brief at 32-33.

We agree with Appellant and conclude that his ineffective assistance of counsel claims have not been previously litigated or waived under the PCRA because "an ineffective assistance of counsel claim is a separate legal issue distinct from the underlying substantive claim for which counsel allegedly had provided ineffective assistance." ***Commonwealth v. Derk***, 913 A.2d 875, 883 n.6 (Pa. Super. 2006); ***see also Commonwealth v. Collins***, 888 A.2d 564, 573 (Pa. 2005). Further, Appellant's seventh claim – where he alleges that he recently discovered exculpatory evidence – is also cognizable under the PCRA and has not been previously litigated or waived. ***See*** 42 Pa.C.S.A. § 9543(a)(2)(vi). Thus, to the extent the PCRA court held otherwise, the court erred.[3]

_____

[3] We note that Appellant is not entitled to relief on appeal unless he can establish that the PCRA court erred when it dismissed his petition without

Appellant's second through sixth claims all revolve around Appellant's contention that eyewitness Tiffany Daniels falsely identified him as the shooter. *See* Appellant's Brief at 12-35. Specifically, Appellant claims, in Ms. Daniels' December 4, 2011 statement to the police, Ms. Daniels told the police that, while she witnessed the shooting, she did not know the shooter or his accomplice. However, on December 5, 2011, Ms. Daniels told the police that, prior to the shooting, she knew Appellant and Co-Defendant Ruiz – and that she witnessed Appellant murder the Victim. *See id.* at 12-19; *see also* N.T. Trial, 9/12/12, at 11-37 and 41-72. According to Appellant, Ms. Daniels' second statement could not have been true because "[a person's] memory while intoxicated does not 'improve' the next day." Appellant's Brief at 16. Further, Appellant claims that the statement was false and manufactured by the police, as the police wanted "to get [Appellant] off the streets for good" and they did this by "coercing Ms. Daniels to change her testimony to implicate [Appellant]." *Id.* at 17.

From this unsupported supposition, Appellant claims that his trial counsel was ineffective for: 1) not requesting a suppression hearing because the affiant in the search warrant affidavit, Detective Krokos, "deliberately used [Ms. Daniels'] fabricated evidence/statements in the affidavit of probable

---

holding an evidentiary hearing. *See*, *e.g.*, *Commonwealth v. Williams*, 977 A.2d 1174, 1177 n.8 (Pa. Super. 2009) ("we may affirm the PCRA court's decision on any basis").

- 11 -

cause" and 2) failing to object to the Commonwealth's use of Ms. Daniels' false testimony at trial.[4]  *See* Appellant's Brief at 12-35.

Appellant's claims on appeal fail.  Simply stated, the mere fact that Ms. Daniels' December 5, 2011 statement to the police differed from her December 4, 2011 statement does not prove that her December 5, 2011 statement was false.  Further, the jury was well aware of Ms. Daniels' differing statements because the defense introduced Ms. Daniels' December 4 and 5, 2011 statements into evidence at trial – and then thoroughly cross-examined Ms. Daniels as to differences between her statements and her possible motivations for giving different statements to the police.  *See* N.T. Trial, 9/12/12, at 11-37 and 41-72.  Thus, Appellant's second through sixth claims are meritless.

Next, Appellant claims that he is entitled to relief because, during the August 20, 2012 oral argument in Co-Defendant Ruiz's direct appeal to the Superior Court, the Commonwealth allegedly "conceded that 'the evidence showed [Appellant] was only involved in a robbery' and that [Co-Defendant] Ruiz 'executed Victor Pearson.'"  Appellant's Brief at 21.  According to

_____

[4] Appellant's claims on appeal are repetitive.  Appellant's contention that his trial counsel was ineffective for not requesting a suppression hearing, as Detective Krokos "deliberately used [Ms. Daniels'] fabricated evidence/statements in the affidavit of probable cause" constitute Appellant's second and third claims on appeal.  Appellant's Brief at 12-26. Appellant's claim of ineffectiveness for failing to object to the Commonwealth's use of Ms. Daniels' false testimony at trial encompasses Appellant's fourth, fifth, and sixth appellate claims.  *Id.* at 26-35.

Appellant, this alleged confession proves that "the prosecutor[] deliberate[ly] use[d] [Ms. Daniels'] false statements . . . during trial" and that he is entitled to relief under the PCRA because the Commonwealth's alleged confession "exculpates" him. *Id.* at 36-37. This claim fails.

Under 42 Pa.C.S.A. § 9543(a)(2)(vi), a petitioner is entitled to relief under the PCRA where their conviction resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). As the Pennsylvania Supreme Court has explained:

> to prevail on an after-discovered evidence claim for relief under subsection 9543(a)(2)(vi), a petitioner must prove that (1) the exculpatory evidence has been discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

*Commonwealth v. Burton*, 158 A.3d 618, 629 (Pa. 2017).

Here, even if the Commonwealth had conceded that 'the evidence showed [Appellant] was only involved in a robbery' and that [Co-Defendant] Ruiz 'executed Victor Pearson,'" Appellant would not be entitled to relief under the PCRA because Appellant was convicted of second-degree murder. Thus, the "concession" that Appellant did not pull the trigger – but was involved in the robbery – does not exculpate Appellant and would not have "changed the outcome of the trial" because the Victim was shot and murdered during the

course of this robbery. **See** 18 Pa.C.S.A. § 2502(b) ("[a] criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony"). Thus, regardless of whether Appellant did or did not pull the trigger, Appellant was guilty of second-degree murder for the homicide that was committed while he "was engaged as a principal or accomplice in the perpetration of" the robbery. **See id.** Appellant's claim on appeal thus cannot succeed.

For Appellant's eighth claim on appeal, Appellant contends that his trial counsel was ineffective for failing to object to "the prosecutor's closing statements wherein he vouched for the truth of [Ms. Daniels'] testimony." Appellant's Brief at 37-38.

Within Appellant's Amended PCRA Petition, Appellant claimed that counsel was ineffective for failing to object to the following statements during the Commonwealth's closing argument: "both men had their hands on the victim" and "Ms. Daniels does not have to lie." Appellant's Amended PCRA Petition, 2/23/17, at 5. However, on appeal, Appellant contends that counsel was ineffective for failing to object to the following statements made during closing argument: a) "And what's significant about her testimony is that she saw it, she saw what happened, she saw who shot him. She saw who robbed him;" b) "What motive does she have to give you that testimony? What interest in the outcome of this case does she have to give you that testimony? And what bias does she have towards anyone to say this was a robbery?" and, c) "I ask you to credit her testimony because it is as I said free of motive, any

bias, or any interest in the outcome of the case." Appellant's Brief at 38-40. Appellant did not plead any of his appellate claims in his PCRA petition. Therefore, the claims are waived. Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"); 42 Pa.C.S.A. § 9543(a) ("To be eligible for relief under [the PCRA], the petitioner **must plead** and prove by a preponderance of the evidence all of the following. . .") (emphasis added).

Ninth, Appellant argues that his trial counsel was ineffective for failing to investigate "video footage that shows [Appellant] was away from the scene when the fatal shot was fired." Appellant's Brief at 40. According to Appellant, he did not receive this particular video footage during discovery. *Id.* at 40-41. Nevertheless, Appellant admits that the jury saw the particular video footage of which he complains and Appellant does not explain how he was prejudiced, in any way, by counsel's alleged failure to investigate. *See id.* at 41. Further, we cannot see how Appellant was prejudiced by counsel's alleged failure to investigate and obtain the video footage, when the jury actually saw the video that, Appellant claims, his attorney failed to obtain.[5] The claim thus fails.

---

[5] Within this numbered claim, Appellant also contends that counsel was ineffective for failing to call an expert "to testify at trial regarding the effects of alcohol on the cognitive functions of the brain in an intoxicated individual." Appellant's Brief at 41-42. This particular claim was not listed in Appellant's Pennsylvania Rule of Appellate Procedure 2116 "statement of questions involved" section of his brief. Therefore, the claim is waived. Pa.R.A.P.

Finally, Appellant claims that his trial counsel was ineffective for failing to object to the trial court's second-degree murder instructions because they "were faulty as a matter of law." Appellant's Brief at 42.

As the PCRA court explained:

> [Appellant] attempts to argue that the jury instruction, when read as a whole, is clearly flawed and mis-instructs the jury on the law and on the theory of criminality, or as the judge stated, "culpability." [Appellant's Amended PCRA Petition, 2/23/17, at 11]. However, when viewed as a whole, this instruction is nearly identical to the second alternative: killing by defendant's co-felon standard jury instruction for second-degree murder. Pennsylvania Suggested Standard Jury Instruction §15.2502(B) - Second-Degree Murder (Second Alternative).
>
> Read as a whole, the charge sufficiently instructed the jury on the charge of second-degree murder. Therefore, counsel cannot be deemed ineffective because he did not argue for different jury instructions. As a result, appellate counsel cannot also be deemed ineffective for failure to raise this issue. Accordingly, this issue is without merit.

PCRA Court Opinion, 6/8/17, at 3-4 (internal footnote and corrections omitted and some internal quotations omitted).

We agree with the PCRA court's cogent analysis and conclude that Appellant's final claim on appeal fails.

---

2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby").

Appellant's "Motion for Oral Argument Transcripts Held in this Court on August 20 2013 in the Matter of Commonwealth v. Brandon Ruiz Docket No: 2230 MDA 2017" denied.  Order affirmed.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/27/2018