J-S44031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| SIMEON BOZIC, | : | |
| | : | |
| Bozic | : | No. 952 EDA 2015 |

Appeal from the PCRA Order March 17, 2015
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s): CP-51-CR-0107651-2005

BEFORE: FORD ELLIOTT, P.J.E., STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED AUGUST 29, 2016**

Simeon Bozic ("Bozic") appeals from the Order dismissing his first Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

In its Opinion filed for Bozic's direct appeal, the trial court summarized the salient facts underlying Bozic's convictions of first-degree murder, robbery, arson, possession of an instrument of crime ("PIC") and criminal conspiracy[2] as follows:

> The decedent in this case, Asia Adams ["the victim"], was a college student who came home to Philadelphia on the weekends. She had recently started going out with … Thomas [Napoleon] Strode ["Strode"], who was a close friend of [Bozic's]. On the night of November 7, 2004, [Bozic] and [Strode] decided to kill and rob [the victim]. The two of them went to her house, and they beat and stabbed her so savagely that they knocked teeth out of her mouth and nearly decapitated

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

[2] *See* 18 Pa.C.S.A. §§ 2502, 3701, 3301, 907, 903.

her.  After she was dead, they took her money and her ATM card and used the card [the following day to make eight withdrawals totaling over $700, which the men used to go shopping together].

The day after the murder, [Bozic] and [Strode] went back to the [victim's] house.  They tried to clean up the blood from the beating and moved her body from the basement to the second floor.  They then set the house on fire, starting with the bedroom in which they had placed the [victim's] body.  After a neighbor called the fire department, the blaze was extinguished and the [victim's] body was found.

[Bozic] turned himself in to homicide detectives after they contacted his mother and let her know that they wanted to interview him.  He gave a full[y] inculpatory statement and consented to having the statement videotaped.  He admitted to killing the [victim] and setting her house on fire, but he insisted that all of his actions were a result of his fear of [Strode].  At the conclusion of the police interrogation, [Bozic] was arrested and charged with the murder of [the victim].

Trial Court Opinion, 1/08/09, at 2-3.

Following a jury trial, Bozic was convicted of the above-described charges.  The trial court thereafter sentenced Bozic to life in prison for his conviction of first-degree murder.  For his remaining convictions, the trial court imposed concurrent prison terms of 20 to 40 years.  Bozic filed a post-sentence Motion, which the trial court denied.  This Court affirmed Bozic's judgment of sentence, after which the Pennsylvania Supreme Court denied allowance of appeal.  *Commonwealth v. Bozic*, 997 A.2d 1211 (Pa. Super. 2010), *appeal denied* 18 A.3d 474 (Pa. 2010).  The United States Supreme Court denied Bozic's Petition for *certiorari* on May 31, 2011.  *Bozic v. Pennsylvania*, 563 U.S. 1025 (2011).

On February 2, 2012, Bozic filed his first, *pro se* PCRA Petition, after which appointed counsel filed an Amended PCRA Petition. After appropriate Notice, the PCRA court dismissed Bozic's Petition without a hearing. Thereafter, Bozic timely filed the instant appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Bozic presents the following claims for our review:

1. Did the [trial] court commit *per se* reversible error by convening a private, off-the-record conversation with a juror, refusing to disclose its contents, and then placing the onus on [Bozic] to uncover this information?

2. Did the [trial] court commit *per se* reversible error by refusing to disclose the nature of its relationship, if any, with a Commonwealth trial witness and placing the onus on [Bozic] to uncover this information?

3. Was trial counsel ineffective for failing to seek a verdict of voluntary manslaughter and/or request a manslaughter instruction based on undisputed Commonwealth evidence that [Bozic] subjectively believed that he would be killed if he did not comply with [Strode's] demands, where such terror refuted the malice requirement for murder?

4. Was trial counsel ineffective for failing to investigate and present the additional evidence necessary to make out either the incomplete or complete defense of duress[,] and was direct appeal counsel ineffective for failing to challenge the trial court's error in precluding other evidence that also would have supported his duress defense?

5. Was trial counsel ineffective for failing to object to the trial court's instruction [that misled] the jury on which party had the burden of proof respecting the defense of duress?

Brief for Appellant at 3-4.

In reviewing the dismissal of a PCRA petition, we examine whether the PCRA court's determination is supported by the record and free of legal error. ***Commonwealth v. Montalvo***, 114 A.3d 401, 409 (Pa. 2015).

Bozic first claims that the trial judge, the Honorable Peter F. Rogers ("Judge Rogers"), committed reversible error when he conducted a private, off-the-record conversation with a juror during trial. Brief for Appellant at 16. According to Bozic, Judge Rogers "asked one juror to meet with him[,] while excusing for the day all other jurors." ***Id.*** Bozic states that Judge Rogers then conducted a private, off-the-record meeting with the juror, without notice to counsel. ***Id.*** Further, Bozic asserts that Judge Rogers subsequently refused to disclose the contents of the discussion. ***Id.*** Bozic argues that "if such a conversation is had, and is not explained satisfactorily on the record, it will, in itself, be grounds for a new trial." ***Id.*** at 17 (quoting ***Bruckshaw v. Frankford Hosp. of Philadelphia***, 58 A.3d 102, 116 (Pa. 2012)). Bozic contends that "[p]rejudice is presumed where the contact between the judge and juror remains unexplained on the record subject to inquiry by counsel." Brief for Appellant at 17 (emphasis omitted). Bozic asserts that Judge Rogers did not maintain a contemporaneous record of his meeting with juror, and kept it confidential for eight years. ***Id.*** at 18. Further, Bozic alleges that Judge Rogers refused to disclose anything in open court, and has denied a hearing on the issue. ***Id.***

In its Opinion, after setting forth the applicable law, the PCRA court addressed Bozic's claim and concluded that it lacks merit. PCRA Court Opinion, 12/31/15, at 16-19. We agree with and affirm the PCRA's rejection of this claim based upon the reasoning set forth in its Opinion.[3] *See id.*

In his second, similar claim, Bozic argues that Judge Rogers erred when he failed to disclose "the nature of the relationship, if any, [he] had with a Commonwealth trial witness…." Brief for Appellant at 20. Bozic states that during the PCRA proceedings, Judge Rogers commented that "a central Commonwealth witness was 'now a lawyer.'" *Id.* Bozic posits that this witness, Alexis Bethea-Lopes ("Bethea-Lopes"), was the victim's best friend, who provided testimony about the relationships between the victim, Bozic and Strode. *Id.* Bozic alleges that immediately after Bethea-Lopes's testimony, Judge Rogers "met privately with a juror." *Id.* Bozic argues that Judge Rogers's failure to disclose the nature of his relationship with Bethea-Lopes raises a presumption of prejudice, warranting a new trial. *Id.* at 21. According to Bozic, "[t]here are few[,] if any[,] other explanations for [Judge

---

[3] Our review of the record discloses that the communication between Judge Rogers and alternate juror Edna Greene ("Greene") took place in open court, albeit off-the-record. *See* N.T., 11/13/07, at 192 (wherein the trial court instructed counsel and those present in the courtroom to remain seated while the jury left the courtroom). The record further reflects that prior to Judge Rogers's discussion with Greene, he instructed those present in the courtroom to "remain in place until the jury can get off the floor." *Id.* Thus, it is apparent that the discussion took place in the courtroom and in the presence of counsel, and counsel voiced no objection to the discussion. *See id.* Greene was discharged from jury duty at the close of trial, prior to deliberations. N.T., 11/19/07, at 106.

Rogers's] having known that [Bethea-Lopes] had become a lawyer." *Id.*

Therefore, Bozic assets, Judge Rogers improperly refused to inform counsel

how he knew of this information. *Id.*

In its Opinion, the PCRA court addressed this claim and concluded that

it has no arguable merit. *See* PCRA Court Opinion, 12/31/15, at 15-16. We

agree with the sound reasoning of the PCRA court, as set forth in its Opinion,

and affirm on this basis as to Bozic's second claim.[4] *See id.*

Bozic's third, fourth and fifth claims allege ineffective assistance of trial

counsel.

> To be entitled to relief on an ineffectiveness claim, [the petitioner] must prove the underlying claim is of arguable merit, counsel's performance lacked a reasonable basis, and counsel's ineffectiveness caused him prejudice. Prejudice in the context of ineffective assistance of counsel means demonstrating there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. This standard is the same in the PCRA context as when ineffectiveness claims are raised on direct review. Failure to establish any prong of the test will defeat an ineffectiveness claim.

*Commonwealth v. Solano*, 129 A.3d 1156, 1162-63 (Pa. 2015) (citations

omitted).

In his third claim, Bozic argues that his trial counsel rendered

ineffective assistance by failing to request a jury instruction on voluntary

---

[4] We additionally note that, at a hearing on Bozic's Motion to recuse, Judge Rogers informed defense counsel that he had mistakenly identified a potential Commonwealth witness as a lawyer who had become a law clerk to Judge George Overton. N.T., 10/1/13, at 8. However, Judge Rogers explained that the law clerk was "never a witness." *Id.*

manslaughter, "based on undisputed Commonwealth evidence that [Bozic] subjectively believed he would be killed if he did not comply with [Strode's] demands[.]"  Brief for Appellant at 22.  Bozic contends that Strode had threatened to kill Bozic if Bozic refused to assist Strode in killing the victim. *Id.*  According to Bozic, he subjectively feared for his life, and therefore lacked the malice necessary to support a verdict of murder.  *Id.*  Bozic further asserts that the evidence supported the defense of duress.  *Id.*

In support, Bozic directs our attention to evidence of record indicating that he was under duress at the time of the crime.  *See id.* at 23 (referring to Bozic's statements and demeanor when meeting with police officers, and his statements to police).  Bozic contends that the Commonwealth did not dispute his version of the events.  *Id.* at 24.  In fact, Bozic states, he testified to the same version of the events at Strode's trial, at which time the prosecutor represented that Bozic had testified truthfully.  *Id.*  Bozic claims that the theory of judicial estoppel precludes the Commonwealth from arguing any contrary version of the events.  *Id.*

Bozic points out that the trial court instructed the jury on the defense of duress.  *Id.* at 29-31.  Notwithstanding, Bozic argues that even if the defense of duress is refuted, the evidence of duress indicated his lack of malice, justifying an instruction on voluntary manslaughter.  *Id.* at 29. Bozic argues that counsel rendered ineffective assistance by failing to

request an instruction on voluntary manslaughter, and never discussed the matter with Bozic. *Id.* at 32-34. Bozic contends that

> [i]f, in a true self-defense case, a trial court is required to convey in its instructions that evidence of self-defense tends to negate the malice necessary to establish murder, and, if[,] in an imperfect self-defense case, a trial court must instruct that evidence of the defendant's subjective belief that he was subject to impending harm tends to negate malice, and, if[,] in a heat of passion case, the trial court must instruct that evidence of intense passion resulting from provocation tends to negate malice, then[,] in a duress case[,] a trial court should instruct that evidence of duress tends to negate malice as well.

*Id.* at 36-37 (citations omitted).

In its Opinion, the PCRA court addressed this claim and concluded that it lacks merit. *See* PCRA Court Opinion, 12/31/15, at 4. Specifically, the PCRA court concluded that evidence of duress does not constitute a recognized defense to the crime of voluntary manslaughter and, therefore, the claim is without arguable merit. *Id.* We agree, and affirm on the basis of the PCRA court's Opinion with regard to this claim. *See id.*

In his fourth claim, Bozic argues that his trial counsel rendered ineffective assistance by failing to investigate and present additional, non-cumulative evidence of duress or lack of malice. Brief for Appellant at 42. Bozic asserts that trial counsel was ineffective for failing to investigate additional witnesses, who would have testified regarding Bozic's shy and sensitive demeanor, and his dominant/subservient relationship with Strode. *Id.* at 43. Bozic also claims that trial counsel rendered ineffective assistance by not presenting evidence of his statements to Prison Health Services that

Bozic "was hopeful of having his name cleared." *Id.* at 44. Bozic contends that "he likely would not have made such a statement unless he sincerely believed that he had lacked all malice during the crime." *Id.* According to Bozic, this supports his defense that he did not willingly participate in the crime. *Id.*

Bozic also contends that trial counsel rendered ineffective assistance by not presenting additional evidence of Bozic's compromised mental state. *Id.* at 45. Bozic claims that he had fallen into depression prior to trial, and also became psychotic. *Id.* at 45-46. Bozic challenges the PCRA court's determination that such evidence was remote or irrelevant. *Id.* at 46. Bozic argues that the complete defense of duress "should be read to permit the defendant to introduce evidence of his own personal[,] subjective 'situation[.]'" *Id.* at 48. Bozic asserts that where duress is proffered as a defense, his characteristics of being subservient, kind and compassionate should be considered. *Id.*

In its Opinion, the PCRA court provided a comprehensive discussion of Bozic's claim, and concluded that it lacks merit. *See* PCRA Court Opinion, 12/31/15, at 4-7. We agree with the sound reasoning of the PCRA court, as expressed in its Opinion, and affirm on this basis. *See id.*

In his fifth claim, Bozic argues that trial counsel rendered ineffective assistance by failing to object to the trial court's "instructional error in shifting the burden of proof on duress." Brief for Appellant at 53. Bozic

asserts that in its instruction on duress, the trial court required Bozic to affirmatively establish the defense, when it is the Commonwealth's burden to refute the elements of duress beyond a reasonable doubt. *Id.* at 54. According to Bozic, the trial court compounded this error, when it required that there must be evidence supporting each of the elements of duress, then listed all of the elements. *Id.* Bozic asserts that he had no burden to produce any evidence in this regard, and the trial court improperly shifted the burden of proof to him. *Id.* Further, Bozic argues that the trial court advised the jury several times that Bozic had the burden to produce evidence necessary to establish the defense, relieving the Commonwealth of its burden. *Id.* at 56. Bozic argues that he suffered prejudice as a result of counsel's inaction. *Id.* at 57.

In its Opinion, the PCRA court addressed this claim and concluded that it lacks merit. *See* PCRA Court Opinion, 12/31/15, at 8-9. We agree with the sound reasoning of the PCRA court, and affirm on this basis as to Bozic's fifth claim. *See id.*

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2016

- 10 -

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA          :     PHILADELPHIA COUNTY
                                      :
VS.                                   :     952 EDA 2015
                                      :     CP-51-CR-0107651-2005
SIMEON BOZIC,                         :
Appellant                             :     **Appeal of PCRA denial**

OPINION

**ROGERS, J.**

On November 20, 2007, Simeon Bozic (herein after "Petitioner"), was convicted

of murder in the first-degree, robbery, arson, possession of an instrument of crime (PIC),

and conspiracy, following a jury trial. Following a denial of extraordinary relief in the

form of a new trial, Petitioner was sentenced to life imprisonment without parole on the

murder conviction, plus concurrent sentences of twenty (20) to forty (40) years on the

remaining convictions. On March 17, 2008, Petitioner filed post-sentence motions, which

were denied by operation of law. On November 2, 2009, Petitioner filed a *pro-se* petition

to have trial and appellate counsel, Daniel Rendine, Esq., removed as counsel, which was

denied by the Superior Court. On June 24, 2010, the Superior Court affirmed Petitioner's

verdict and sentence in a published opinion.[1] Thereafter, allowance to the Pennsylvania

Supreme Court was denied on December 2, 2010, as well as to the United States Supreme

Court on May 31, 2011. On February 2, 2012, Petitioner filed a *pro-se* petition under the

Post-Conviction Relief Act (PCRA), and Mitchell Strutin, Esq., was subsequently

---

[1] *Commonwealth v. Bozic*, 997 A.2d 1211 (Pa. Super. 2010).

appointed. Thereafter, Petitioner retained current appellate counsel, Daniel Silverman, Esq. to assert his post-conviction relief claims. On January 4, 2013, Mr. Silverman filed an amended petition PCRA and memorandum of law, in which multiple claims of ineffective assistance of trial counsel were raised. Thereafter, following the subsequent filing of additional motions and supplements, this court filed its notice of intent to dismiss Petitioner's claims on November 24, 2014, and formally dismissed the claims for post-conviction relief on March 17, 2015. Petitioner has appealed that dismissal, which is the basis for this opinion.

The facts of this case can be found in this court's opinion of January 8, 2009, on pages 2-3, as well as aptly summarized by the Superior Court in its opinion and order of June 24, 2010, on pages 2-3.

In his statement, Petitioner asserts various claims of court error. After a full review of the record, no relief is warranted as the PCRA court properly dismissed Petitioner's claims. For the following reasons stated herein, Petitioner fails to assert any claim for which relief can be granted.

The appellate standard of review of a PCRA court's dismissal of a PCRA petition "is limited to examining whether the PCRA court's determination is supported by the evidence of record and free of legal error." *Commonwealth v. Wilson*, 824 A.2d 331, 333 (Pa. Super. 2003). It is well-settled that "great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record." *Id*.

Petitioner asserts various claims concerning his defense asserted at trial. Specifically, Petitioner claims that the PCRA court erred in denying his claim that the

2

trial attorney rendered ineffective assistance of counsel in failing to request an involuntary manslaughter instruction based on evidence that Petitioner committed these crimes for which he was convicted under duress, which would have reduced the crime to manslaughter, and that the evidence supported a manslaughter charge because of the "terror he experienced and his subjective but unreasonable belief that he was coerced to participate in the crime."

It is well settled that the law presumes that counsel was effective and the defendant carries the burden of proving by a preponderance of the evidence that counsel's representation was so ineffective that it undermined the truth determining process and prevented a reasonable adjudication of guilt or innocence. *Commonwealth v. Kimball*, 724 A.2d 326 (Pa. 1999). The law presumes that counsel provided effective representation and the petitioner bears the burden of proving otherwise. *Commonwealth v. Khalil*, 806 A.2d 415 (Pa. Super. 2002). In order to prevail on a claim of attorney ineffectiveness, it is the petitioner must prove that (1) the underlying claim has arguable merit, (2) counsel's actions or inaction had no reasonable basis, and, most importantly, (3) the petitioner was prejudiced by the act or omission to such a degree that but for counsel's conduct, the outcome of the proceedings would have been different. *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987); *Strickland v. Washington*, 466 U.S. 668 (1984). Prejudice is established "if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Commonwealth v. Burkett*, 5 A.3d 1260 (Pa. Super. 2010). If *any* of these elements are not satisfied, the claim fails. *Commonwealth v. Fulton*, 830 A.2d 567 (Pa. 2003). *See also*, 42 Pa.C.S.A. §9543.

3

Pennsylvania recognizes two types of voluntary manslaughter. In the first type, an individual is guilty if he acts under a sudden and intense passion resulting from serious provocation by the individual killed. *See, Commonwealth v. Soltis*, 687 A.2d 1139 (Pa. Super. 1996). The second type of manslaughter is the "unreasonable belief" version in which the defendant intentionally kills another person while acting under the unreasonable belief that he is in danger of serious bodily harm from the individual killed. *Id.* After a review of the facts of this case and the evidence admitted at trial, Petitioner cannot, after the evidence admitted at trial, assert that the victim in this case in any way provoked or threatened him before he killed her. Because the two types of voluntary manslaughter crimes recognized in this Commonwealth require that the defendant believe he is acting out of serious provocation *by the victim*, or in danger of serious harm *from the victim*, then Petitioner's claim of requesting such a charge based on the duress allegedly inflicted upon him *by his co-defendant* fails. This claim has no merit according to the facts of this case, as it has never been recognized in Pennsylvania under statutory law. Therefore, knowing that information, it would have been inappropriate for trial counsel to make such a request. Counsel cannot be faulted for taking meritless actions. *Commonwealth v. Smith*, 650 A.2d 863 (Pa. 1994).

Petitioner also asserts that trial counsel was ineffective for failing to investigate and present additional evidence necessary to make out his defense of duress. In particular, Petitioner argues that after the crimes were committed, he fell "into a deep depression and eventually "became psychotic" to the point that he was unable to stand trial, as well as counsel's failure to locate additional witnesses to support his claim of duress.

4

Simply stated, after a review of the evidence admitted at trial, Petitioner could not assert a justifiable claim of duress in this case. Therefore, knowing this information, trial counsel made the strategic decision not to investigate any additional evidence in support of that claim.

In its opinion and order, in rejecting Petitioner's weight of the evidence claim, the Superior Court referred to the evidence admitted at trial that blatantly refuted a claim of duress (i.e., Petitioner's own statement to the police stated that he had ample opportunity to escape the scene of the murder and not participate; that Petitioner decided to stay with his co-defendant even after the crimes and not seek help or assistance from law enforcement; that Petitioner and his co-defendant were best friends which was noted by several witnesses; that Petitioner and his co-defendant spent the night in the same house together following the murder, and that it was Petitioner who awoke first the next day but declined to leave or call police; that Petitioner and his co-defendant returned to the scene of the crime the following day to move the body and clean the scene together; that Petitioner and his co-defendant were seen side-by-side shopping together with the victim's money the day after the murder; and that Petitioner never turned himself in, alerted the police, or fled the scene at any time, etc.). All of those facts, known to trial counsel, fail to support a claim of duress. *See, Commonwealth v. Baskerville*, 681 A.2d 195 (Pa. Super. 1996) (defendant did not act under duress to kill even though he owed his co-conspirator money, knew the co-conspirator had a loaded gun and feared being shot, where defendant failed to turn himself in to police, or take one of numerous opportunities to flee the scene).

In addition, Petitioner fails to even demonstrate how his depressed mood in prison awaiting trial relates or even supports his claim of duress. According to prison records, Petitioner suddenly appeared depressed approximately two weeks following the heinous crimes he committed while awaiting trial for capital murder. Evidence found in behavioral health records taken while in prison stating that Petitioner "was afraid of others" for no reason, and that he feared his co-defendant, would not have supported a claim of duress given the facts and evidence admitted at trial. This claim is weak and baseless. Furthermore, after Petitioner suffered a "paranoid incident," which occurred four months *after* the murder, he was deemed competent to stand trial only sixty days later. Petitioner's mental state months after his crimes did not stem from the alleged duress he was under by his co-defendant to commit murder. Again, a claim of ineffectiveness fails. The fact that counsel was aware of Petitioner's "depressed state" after the crimes, as well as suffered mental stress for months after the heinous crimes were committed, it was determined that introducing that evidence would not have altered the outcome of the trial, and Petitioner suffered no prejudice.

Further, Petitioner asserts that witnesses were available who could have provided information at trial noting Petitioner's "quiet, humble, easily-led, and considerate" nature. Concerning this issue, Petitioner was asked by the court if he wanted to present any additional witnesses, to which he declined. *See, Commonwealth v. Lawson*, 762 A.2d 753 (Pa. Super. 2000) (A defendant who voluntarily waives the right to call witnesses...cannot later claim ineffective assistance of counsel). In order to prevail on a claim of trial counsel's ineffectiveness for failure to call a witness, the appellant must show: (1) that the witness existed; (2) that the witness was available; (3) that counsel was

6

informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) that the absence of the testimony prejudiced appellant. *Commonwealth v. Brown*, 767 A.2d 576 (Pa. Super. 2001). Petitioner offered no evidence that these witnesses existed, that they were willing and able to testify, or most importantly, that the absence of their testimony prejudiced him, all of which is required by law. Therefore, Petitioner cannot raise an issue of ineffectiveness concerning this issue.

With the knowledge defense counsel possessed concerning the facts and evidence of the case, he made the strategic decision to not investigate further, or present any additional evidence to support this defense, as it failed to advance the claim of duress. Thus, he cannot be deemed ineffective, as Petitioner was not prejudiced by the inaction of trial counsel concerning this issue. *See, Smith, supra.*

Furthermore, Petitioner also claims that the PCRA court erred in denying relief in that appellate counsel rendered ineffective assistance in failing to raise and preserve the claim that the court erred in precluding Petitioner from introducing evidence that would support the defense of duress. It is well settled that since no claim of ineffectiveness can be demonstrated against trial counsel, no similar claim can be established against appellate counsel. *Commonwealth v. Lopez*, 854 A.2d 465 (Pa. 2004). Contrary to what Petitioner asserts, neither trial counsel nor appellate counsel can be faulted for investigating these alleged instances supporting a claim of duress. Again, given the overwhelming evidence admitted into the record, the jury determined that Petitioner was not under duress while committing these crimes, but an active and willing participant according to the numerous facts admitted at trial, and doing so with malice and

7

premeditation. No attorney ineffectiveness claim can be substantiated concerning this issue.

Petitioner further asserts that the PCRA court erred in denying his petition in that trial counsel was ineffective in failing to object to the trial court's instruction concerning duress. Specifically, Petitioner claims that this particular instruction improperly placed the burden of proof on the defense. Simply stated, the instruction was proper. The trial court instructed the jury on the defense of duress as per the *Pennsylvania Suggested Standard Jury Instructions – Duress 8.309*. It is well settled that a judge has wide discretion in the wording of jury instructions, which must be read and taken as a whole, and not in individual parts or sections. *Commonwealth v. Ragan*, 743 A.2d 390 (Pa. 1999). Petitioner argues that the language used in the instruction places an undue burden on Petitioner. However, by asserting such an argument, it appears Petitioner is questioning the actual language of the charge itself, and not how the trial court delivered the instruction to the jury, which is misplaced in this appeal. The law only requires that as long as the proper instruction is used and it is clear and adequate, no relief is due. Here, the court's instruction was clear and proper. As the instruction on duress was in accordance with the standard jury instructions, trial counsel had no reason to object. *See, Commonwealth v. Kerrigan*, 920 A.2d 190 (Pa. Super. 2007) (an instruction that used the language in the standard instructions is presumed accurate). In addition, in a PCRA petition, an ineffectiveness claim is analyzed concerning the actions or omissions of *counsel* - not the trial court. *See, Commonwealth v. Clayton*, 816 A.2d 217 (Pa. 2002), and *Commonwealth v. Derk*, 913 A.2d 875 (Pa. Super. 2006). Petitioner's assertion

concerning the language contained within the charge itself is improperly asserted here. No relief is due.

Petitioner also asserts claims of error concerning the *voir dire* process. Specifically, Petitioner claims that the court erred in denying his petition that the trial attorney was ineffective for failing to object to the procedure of the trial court in conducting significant portions of the jury selection process in his absence. This assertion is without merit. A defendant has a constitutional right "to be present at any stage of the criminal trial process that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). However, if the defendant asserts that he was improperly absent from a critical aspect of his case, he must demonstrate actual prejudice. *Commonwealth v. Ressler*, 798 A.2d 221 (Pa. Super. 2002).

Petitioner was an active and attentive participant during the jury selection process. However, Petitioner argues that he was not brought into the courtroom until *after* jury selection had already begun. After a review of the record, before Petitioner was brought into the room, the trial court ruled on some miscellaneous matters and motions, for which Petitioner's presence was not required. Thereafter, the point Petitioner is asserting is that after ruling on those motions, the trial court did immediately excuse some potential jurors based upon obvious hardships and disqualifiers based on their questionnaires, which is standard procedure in every jury selection process. Petitioner's presence was not needed or required. After the court discharged some of the jurors based on obvious hardships and disqualifications, the actual jury *selection process* began (i.e., the questioning of the individual jurors) for which Petitioner was present. Petitioner cannot demonstrate any

9

prejudice, as the discharge of a few unqualified jurors, who in good faith could not serve on a jury for a legitimate reason based on their questionnaires, was neither significant to the selection of his jury, nor did the court commit any error in that the process of eliminating jurors based on blatant disqualifiers. Therefore, knowing that information, trial counsel likewise cannot be deemed ineffective, as there was no reason to raise an objection. Furthermore, if counsel had raised any objection, it would have been properly denied. No error exists. *See, Thomas, supra.*

In addition, Petitioner described his jury selection process as "unprecedentedly rushed," and therefore the court abridged his rights to an impartial jury. After a review of the record, from the first day, the trial court conducted jury selection in an efficient, detailed, and orderly process. The court began the *voir dire* process by talking with the jury, at length, as to how the individual questioning process would be conducted, as well as informing them as to how to answer questions. The court introduced its staff and explained their duties in the courtroom, and informed the potential jurors as to how a homicide trial is conducted. Thereafter, jury selection began by the court posing some general questions to the jury panel. Petitioner was present for the entire proceeding, and never objected to or questioned the speed or pace of the jury selection process. When the court would call the attorneys into chambers to discuss potential jury challenges and strikes, defense counsel relayed that information and explained the contents of the chamber meetings to Petitioner, to which he had no objection.

In short, Petitioner was present for all of the actual jury selection process, and was not denied his right to be present during jury selection. Also, any time the attorneys met with the judge in chambers concerning the disqualification of jurors, Petitioner was fully

10

informed of the contents of the discussion. Furthermore, the entire selection process itself was conducted efficiently and properly. Accordingly, there was no basis for trial counsel to object to any portion of the jury selection process, as Petitioner suffered no prejudice, nor can he demonstrate any from the record.[2] Petitioner's assertions have no merit. No error exists.

Petitioner also states that the PCRA court erred in denying his petition regarding various issues as to his videotaped confession. Specifically, Petitioner asserts that (1) that trial counsel was ineffective in failing to object, on hearsay and confrontation clause grounds, to the out-of-court statements of the interrogating detective, as he never testified as a witness and subject to cross-examination, and to the inadequacy of the trial court's cautionary instruction, and (2) that direct appeal counsel also rendered ineffective assistance of counsel in failing to raise on direct appeal trial counsel's motion *in limine* to exclude the "mocking, disbelieving statements and facial expressions" of the interrogating detective, as they constituted inadmissible opinion evidence on the credibility of Petitioner, and thus completely undermined his defense.

Petitioner has misstated the facts. Contrary to his claim, and *prior to trial*, defense counsel did object to the out-of-court statements contained within the videotaped confession, including the detective's facial expressions and comments. Trial counsel presented argument to the court that those mentioned portions of the videotape should have been redacted, as he felt the detective mocked Petitioner during his taped confession. That motion was properly denied at the discretion of the trial court. Now, Petitioner incorrectly asserts that same claim under the guise of a hearsay and

---

[2] Petitioner also asserts claims of error concerning the questioning of certain witnesses. After a review of the record, these assertions are also without error, as the questioning process concerning each potential juror was conducted properly, and with the consent and agreement of Petitioner.

11

confrontation clause violation, which is not a sensible argument. No matter how counsel would have objected to the videotape being redacted, the court ruling would have been. the same – credibility is to be decided by the jury. *See, Commonwealth v. Lehr*, 583 A.2d 1234 (Pa. Super. 1990) (matters of credibility are vested in the sound discretion of the trier of fact).

In addition, on each of the four separate occasions *during trial* when the prosecutor referred to the detectives' demeanor in the videotape, the defense counsel raised an objection, which was ruled upon in the form of a cautionary instruction to the jury. The court explained to the jury, in detail, the concept of witness credibility, and that only they could decide what weight and credibility to afford the entire videotaped confession. Thus, it was presumed that the jury followed the instructions of the court. *See, Commonwealth v. Tedford*, 960 A.2d 1 (Pa. 2008).[3]

Therefore, although trial counsel *did* object on numerous occasions concerning the detective's demeanor during Petitioner's videotaped confession, it was without success, as the law is clear that determinations of credibility are within the sole province of the jury. *Lehr, supra.*

Furthermore, because trial counsel cannot be deemed ineffective, appellate counsel is also immune from such a claim. *See, Lopez, supra.* No attorney ineffectiveness can be founded at the trial or appellate level concerning this issue.

---

[3] In addition, the Superior Court, in its opinion and order, affirmed Petitioner's conviction and sentence, which included a weight of the evidence claim. Furthermore, regardless of the interrogating detective's demeanor during the videotaped confession, Petitioner also detailed his involvement in a written confession, and the prosecution presented numerous witnesses and admitted the evidence necessary to support a first-degree murder conviction in this case.

12

Petitioner also asserts that the PCRA court erred in never addressing that portion of Petitioner's motion for discovery requesting information on the witness who saw the co-defendant "brandish a knife and make boastful threats of violence."

Regardless of Petitioner's assertion and argument, it is well settled that in PCRA cases, there is absolutely no right to discovery. The Supreme Court of this Commonwealth has ruled that defendants on appeal do not have the same entitlement to discovery at the PCRA level as they do at the pre-trial level. *See, Commonwealth v. Abu-Jamal*, 720 A.2d 79 (Pa. 1998). A defendant has more than ample time and opportunity to obtain the necessary and relevant discovery in order to prepare for trial, but that same defendant cannot take a second bite of the apple because they are unsatisfied with the outcome of the trial. An extremely narrow exception to this rule states that discovery in PCRA cases is *only* permissible by a showing of "exceptional circumstances." *See,* Pa.R.Crim.P. 902(E). Petitioner's claim that his discovery request was denied based on a witness who was seen brandishing a knife and making boastful threats of violence falls under the category of mere conjecture, and not an exceptional circumstance. Aside from this assertion, the abundance of evidence against Petitioner far outweighs any chance of him offering a trivial piece of evidence in the hope of tipping the scales in his favor at this stage of his appeal. By definition, claims of unsubstantiated speculation do not equate to exceptional circumstances. *See, Commonwealth v. Bryant*, 855 A.2d 726 (Pa. 2004). This request was properly denied.

Petitioner also asserts that the PCRA court erred in denying his claim in that the "cumulative impact" of all of the errors set forth in his petition denied him a fair trial and due process. This claim is also without merit. Petitioner's individual allegations of error

13

do not amount to a single sustainable claim because of its cumulative effect. Again, our Supreme Court has held that "no number of failed claims may collectively warrant relief if they do so individually." *Commonwealth v. Tedford*, 960 A.2d 1 (Pa. 2008). The only time defense counsel can be deemed ineffective is where the trial record is inundated with sustainable errors in instances categorized as a "deficient performance." *See, Commonwealth v. Johnson*, 966 A.2d 523 (Pa. 2009). Clearly, after a full review of the record, counsel's overall performance does not meet the deficient performance standard, as counsel defended Petitioner vigorously and raised relevant and proper objections. This claim must fail. No error exists.

In yet another supplement to his amended petition, Petitioner alleges *pro se* that trial counsel was ineffective in failing to file a motion to dismiss the charges against him pursuant to Pa.R.Crim. 600. This claim also fails in that Petitioner has failed to develop any claim of specific error. Petitioner fails to list any dates or reasons for any continuances, nor does he explain or develop *how* his Rule 600 rights were violated. Petitioner, in his single supplemental attachment has failed to list any date or reason for delay attributed to the Commonwealth or the trial court. Therefore, a bald assertion of a Rule 600 violation fails. Moreover, neither trial, appellate, nor PCRA counsel deemed this to be a viable issue to assert, as it is one that would have been addressed early in the proceedings, yet Petitioner now feels the need to raise this issue. Petitioner's claim was improperly raised and without merit.

14

Lastly, Petitioner asserts that the trial court erred in failing to disclose, during trial, the contents of a "private off-the-record" conversation with a juror and in refusing to disclose the nature of that conversation. In addition, Petitioner raises a claim that the trial court erred in failing to disclose "the nature of its relationship, if any, with a Commonwealth trial witness." Both allegations have no merit.

Rather than develop any meaningful or constructive argument on how the actions of *counsel* prejudiced him, Petitioner only asserts how the trial court erred in engaging in alleged communications with jurors and a witness in the case. Petitioner has not stated how the actions of the trial court affected *trial counsel's performance*. Therefore, his failure to develop any argument concerning an ineffectiveness claim with respect to counsel results in a waiver of those claims. *See*, *Clayton*, and *Derk*, *supra*.

However, concerning Petitioner's belief that the trial court was "engaging" in a type of "relationship" with a witness was merely the result of a passing comment at a status listing on July 11, 2013. As the court recapped the facts of the case in open court, six years after the trial, the court mentioned that one of the victim's girlfriends, *"who is now a lawyer,"* witnessed the co-defendants on the street following the murder. That single statement is the sole basis for Petitioner's accusation of a "relationship" with a named witness. After review, this accusation is groundless in that the trial court realizes it made a mistake by confusing the named witness with a known unrelated acquaintance. Therefore, the trial court did not know the witness personally, or even informally, outside of court. The trial court did not engage in any type of impropriety, and Petitioner was invited to fully investigate his accusation against this court. However, Petitioner himself is not even certain of the witnesses' identity. *See*, *(Petitioner's Motion for Disclosure*, pg.

15

1) ("...counsel asked the court to disclose the nature of its relationship, if any, with a Commonwealth witness thought to be either Ms. Alexis Bethea-Lopes or Ms. Shari Holloway..."). So rather than investigate this illusory claim and produce any evidence to back this accusation, Petitioner has only demanded that the court provide information as to whether or not it engaged in a relationship with a witness. Although Petitioner has failed to demonstrate how this issue affected trial counsel's performance in a PCRA appeal, and is therefore waived, nothing in the record supports this claim or suggests any improper relationship by the court, as the court simply erred in its incorrect reference to a witness in the case.

Likewise, in the court records of November 13, 2007, after the jurors in the case were excused for the day, the court made an unrecorded comment to a juror as she was leaving the courtroom. That single comment to that juror was magnified into the court being accused of having a private off-the-record detailed conversation during trial. Counsel petitioned this court, requesting the name of the juror in question, as well as authorization to obtain that juror's contact information. This court granted that motion and ordered the jury trial commissioner to provide the court with the names and addresses of the jurors in the case in a sealed confidential form, which was delivered directly to judicial chambers. Petitioner had the opportunity to investigate this issue fully. However, he has not produced any evidence or findings to this court that he has conducted any investigatory work or produced any findings concerning this issue. Therefore, as the confidential records were unsealed and made available to him, Petitioner had the necessary information to research and investigate this issue, yet either has failed to do so, or his investigation has been unsuccessful. Either way, by providing Petitioner with that

16

information, it is not the fault of this court that he has not found any evidence to substantiate this baseless claim.

However, the juror in question was Edna Greene, Alternate Juror Number 14. N.T. 11/19/07, pgs. 103-107. At the end of the day on November 17, 2007, the trial court called to the juror as she was leaving the jury box, and briefly spoke to her. As the encounter occurred eight (8) years ago, this court is not certain of the exact wording used, but it is certain that it did not include anything pertaining to the case, nor did it merely "engage in discussion" with the juror for no reason, as this court did not involve itself in such behavior with a juror before or during trial – this court is certain of that fact.

The Pennsylvania Supreme Court eliminated a *per se* rule in a related context: contact between judges and jurors. Previously, any *ex parte* contact between a juror and a judge, no matter how innocuous, required a new trial. *Argo v. Goodstein*, 228 A.2d 195 (Pa. 1967). However, that rule was overruled in *Commonwealth v. Bradley*, 459 A.2d 733 (Pa. 1983), and required the moving party to show "[a] reasonable likelihood of prejudice." *Id.* The reason for prohibiting a trial judge from communicating with a jury *ex parte* is to prevent the court from unduly influencing the jury and to afford counsel an opportunity to become aware and to seek to correct any error, which might occur. Where there is no showing either that the court's action may have influenced the jury or that its directions were erroneous, then the reason for the rule dissolves. *Id.* at 37, 459 A.2d at 739 (emphasis and citations omitted) (quoting *Yarsunas v. Boros*, 223 A.2d 696, 698 (1966).

Here, the court recalls that the comment may have concerned the court's issue with the juror's tardiness, but nothing more. Such a comment, or one similar, cannot be

17

held to the level of impropriety, or according to *Bradley*, any reasonable likelihood of prejudice. Such comments are typical during trial since the court must deal with daily "housekeeping matters" in order to ensure that the trial commences on time and in an efficient manner. In *Rushen v. Spain*, 464 U.S. 114 (1983), the United States Supreme Court stated, "it is virtually impossible to shield jurors from every contact or influence...," and these *ex parte* communications are "day-to-day realities of courtroom life...." *Commonwealth v. Johnson*, 828 A.2d 1009, 1013 (Pa. 2003). Furthermore, the mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right. *U.S. v. Gagnon*, 470 U.S. 522 (1985). The defense has no constitutional right to be present at every interaction between a judge and a juror, nor is there a constitutional right to have a court reporter transcribe every such communication. *Id.*

Although it is noted in the record that this court spoke briefly to Ms. Greene, neither trial counsel nor appellate counsel objected to this purported communication, or developed this specious claim of error, establishing that such *ex parte* communications occurred, as they both correctly deemed it meaningless with no bearing on this case. The attorneys at the trial and appellate levels knew that nothing supported a claim of impropriety and that Petitioner was somehow denied a fair trial because of some innocuous remarks by the court. This court has never engaged in improper or inappropriate communications with a juror.

This accusation neither has merit, nor can Petitioner demonstrate how a brief comment had any possible effect on the outcome of the trial. As previously stated, it is well settled that Pennsylvania law generally requires a showing that *ex parte*

18

communications with a jury resulted in prejudice in order to warrant relief. *See Commonwealth v. Ali*, 10 A.3d 282 (Pa. 2010), and *Commonwealth v. Daniels*, 104 A.3d 267 (Pa. 2014). No such evidence has been offered.

Both of these unsubstantiated accusations concerning "improper contact" with a witness and a juror are merely the result of counsel's displeasure at being reprimanded by the trial court for his inappropriate actions in court during this appeal. In actuality, counsel's actions of sending numerous letters demanding explanation for these non-issues nearly resulted in contempt of court. *See attached, (Commonwealth's Response of Recusal Motion*, August 15, 2013). Counsel repetitively inundated this court with unreasonable demands as he felt the court's response to his inquiries was insufficient to him, even though he lacked any evidence to support either of these serious accusations. Nothing in the record denotes any wrongdoing or impropriety by the trial court, and the court is quite displeased at having to address these issues.

[Intentionally Left Blank]

As to the petition as a whole, Petitioner's claims have no merit, and are entirely speculative, as he has failed to show, by counsel's actions or inactions, how he was prejudiced to the degree that any of the alleged claims of error would have altered the verdict rendered against him, or that the outcome of the proceedings would have been different.

Petitioner has failed to assert any claim of merit required by law. Each of the claims should be dismissed.

THE HONORABLE PETER F. ROGERS
COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

20