J-S37042-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT  OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL MCDOWELL | : | |
| | : | |
| Appellant | : | No. 28 EDA 2022 |

Appeal from the PCRA Order Entered December 14, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004138-2016

BEFORE:  BOWES, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 18, 2023**

Appellant, Michael McDowell, appeals from the order entered on December 14, 2021, which dismissed his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. § 9541-9546.  We vacate and remand.

A prior panel of this court summarized the facts underlying Appellant's convictions:

> On January 19, 2016, in the mid-afternoon, a truck owned by Appellant's friend, Sean Fishgold, rear-ended a vehicle driven by Augustine Swaray, on the 7300 block of Torresdale Avenue in . . . Philadelphia.  The truck hit Swaray's car with such force [that Swaray's vehicle] struck a tree and another parked vehicle.
>
> Swaray was unable to identify the truck's driver either before or during trial, although he did narrow down a double blind photo array to two photographs, one of which was Appellant's.  Approximately one week after the accident, Swaray gave a description of the driver to the police.

At trial, Swaray was unable to recall the description. During cross-examination, defense counsel read this description to Swaray which included the information Appellant was wearing[] a "short-sleeved shirt" which was "white." Mr. Swaray affirmed the shirt color and the shirt was a t-shirt but never confirmed the sleeve-length. Defense counsel did not question Swaray as to whether the driver had any tattoos on his arms. Swaray was not injured as a result of the accident, although his car suffered $800.00 worth of damage.

After hitting Swaray's car, the truck attempted to leave the scene, drove directly into the opposing lane of traffic and struck a vehicle driven and owned by Michelle Hunter head-on, totaling it. The [truck's] driver attempted to extricate his vehicle from hers but was unsuccessful, and he fled the scene on foot.

Michelle Hunter was the only witness to identify Appellant. She gave a description of Appellant to the police, selected his photo from a double blind array, and identified him both at the preliminary hearing and at trial. [Ms.] Hunter described Appellant as wearing a white t-shirt but never mentioned and was never questioned about the length of the sleeves. Defense counsel did not question her about any tattoos she might have observed on Appellant's arms.

While searching [the truck], the police found the operating keys on a ring with multiple gym passes; all of the passes belonged to Appellant. The police were able to determine Fishgold was at the gym at the time of the accident. [Fishgold] admitted to the police Appellant was a friend and fellow roofer who had borrowed the truck on at least one previous occasion.

As a result of the car accident, [Ms.] Hunter . . . said she had to attend cognitive brain therapy, was unable to walk or "function correctly" for two weeks, was unable to work for four to five months, could not care for her children for three weeks, and was unable to drive a car for six months. [At trial,] defense counsel stipulated to the admission of Hunter's medical records and [further stipulated] that

. . . the medical records indicate that Michelle Hunter was admitted to Aria Torresdale Hospital 3:11 p.m. on January [19], 2016. She received among other things a CT scan of her head where the doctors found trauma, soft tissue damage and swelling in her frontal brain area.

[Ms.] Hunter was diagnosed with a closed head wound, a contusion to her forehead and trauma to her brain. She was discharged from the hospital later that night.

At trial, Appellant did not present any evidence regarding either the length of his shirt sleeves or whether he had tattoos on his arms at the time of the accident, two years earlier. Immediately prior to closing, Appellant *sua sponte* began to disrobe because he wanted the jury to see his tattooed arms. However, when the trial court asked defense counsel if he wanted to put on rebuttal evidence regarding the tattoos, counsel declined. The trial court did permit the jury to view Appellant in short sleeves with no testimony.

Appellant called two witnesses on his behalf, a co-worker, Shawn Rooney, who testified he believed Appellant was at work with him at the time of the accident. Appellant also called Fishgold, who testified Appellant had not borrowed the truck from him that day and thought Appellant had left his gym passes in the truck earlier.

On June 13, 2018, the jury convicted Appellant of aggravated assault, [accidents involving death or personal injury, accidents involving damage to attended vehicle or property, and aggravated assault by vehicle].[1]

***Commonwealth v. McDowell***, 239 A.3d 43, **1-2 (Pa. Super. 2020) (non-precedential decision).

On August 31, 2018, the trial court sentenced Appellant to serve an aggregate term of eight to 16 years in prison, followed by five years of

---

[1] 18 Pa.C.S.A. § 2702(a)(1) and 75 Pa.C.S.A. §§ 3742(a), 3743(a), and 3732.1(a), respectively.

probation, for his convictions. N.T. Sentencing, 8/31/18, at 20-21. On July 2, 2020, this Court affirmed Appellant's judgment of sentence and, on November 24, 2020, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. McDowell*, 239 A.3d 43 (Pa. Super. 2020) (non-precedential decision), *appeal denied*, 242 A.3d 309 (Pa. 2020).

On February 10, 2021, Appellant filed a timely, counseled PCRA petition. In the petition, Appellant claimed that his convictions and sentences for aggravated assault and aggravated assault by vehicle should be vacated as those convictions were obtained in violation of his due process rights. With respect to this issue, Appellant claimed that his convictions were based upon "false evidence, *i.e.*, an erroneous stipulation to [Ms. Hunter's] injuries." To support this claim, Appellant attached Ms. Hunter's medical records from Aria Health Torresdale Hospital as well as a report prepared by Brian D. Greenwald, M.D., the Medical Director of Center for Brain Injuries and the Associate Medical Director of JFK-Johnson Rehabilitation Institute.

At the outset, during trial, Appellant and the Commonwealth stipulated to the following:

> the medical records indicate that Michelle Hunter was admitted to Aria Torresdale Hospital [at] 3:11 p.m. on January [19, 2016]. She received among other things a CT scan of her head where the doctors found trauma, soft tissue damage and swelling in her front brain area.

- 4 -

Ms. Hunter was diagnosed with a closed head wound, a contusion to her forehead and trauma to her brain. She was discharged from the hospital that night.

N.T. Trial, 6/12/18, at 191-192.

Notwithstanding the stipulation agreed to by counsel for the parties, Appellant claimed that Ms. Hunter's medical records did not indicate that she suffered "swelling in her front brain area" or "trauma to her brain." *See id.* To support this claim, Appellant attached Ms. Hunter's medical records to his petition. These medical records declared that, following the collision, Ms. Hunter was diagnosed with the following: closed head injury, contusion of head, laceration, MVC (motor vehicle collision), and elevated creatine kinase. Ms. Hunter's Discharge Instructions, 1/19/16, at 1. Further, Appellant attached the summary of a CT scan of Ms. Hunter's head. The summary declared that Ms. Hunter suffered "midline frontal soft tissue swelling" and a "[s]oft tissue injury." Ms. Hunter's CT Summary, 1/19/16, at 1.

Appellant also attached Dr. Greenwald's report to his PCRA petition. Within the report, Dr. Greenwald declared that he reviewed the trial court record, including the trial transcript and Ms. Hunter's medical records. Dr. Greenwald Report, 12/27/20, at 1. Dr. Greenwald opined:

> 1. The stipulation regarding Ms. Hunter's medical records that was read by the prosecutor and agreed to by [Appellant's counsel] was an incorrect summary of the medical records admitted into evidence at trial. Specifically, the CT scan of the head showed soft tissue damage (swelling of the forehead), but no evidence of swelling in the frontal brain area. Additionally, the records did not reflect that Ms. Hunter was diagnosed with trauma to the brain.

2. Based on the emergency room records admitted into evidence at trial, it cannot be said within a reasonable degree of medical certainty that Ms. Hunter suffered a concussion, traumatic brain injury, brain swelling and/or trauma to her brain.

3. Taken together, the medical records admitted into evidence at trial and Ms. Hunter's testimony, it cannot be said within a reasonable degree of medical certainty that Ms. Hunter suffered a concussion, traumatic brain injury, brain swelling and/or trauma to her brain.

Dr. Greenwald Report, 12/27/20, at 2-3.

Dr. Greenwald declared that his opinions were "given to a reasonable degree of medical certainty" and that, if he "had been retained as an expert witness at the time of [Appellant's] trial, [he] would have been willing and able to testify consistently with the conclusions set forth above." *Id.* at 3.

Within Appellant's PCRA petition, Appellant also claimed that his trial counsel (hereinafter "Trial Counsel") was ineffective for: "stipulat[ing] to injuries that were not supported by the medical evidence or testimony;" "fail[ing] to secure and/or present the testimony of an expert witness" who "would have explained to the jury that neither the medical records nor the victim's testimony would support a finding that Ms. Hunter suffered a concussion, traumatic brain injury, brain swelling and/or trauma to her brain;" and, "fail[ing] to object to inadmissible evidence [regarding Appellant's gym tags] that undercut [Appellant's] identification defense." PCRA Petition, 2/10/21, at 4.

On March 17, 2021, Appellant filed an amended PCRA petition, where he claimed that he recently received a recorded telephone conversation

between Joseph Hunter, who was Ms. Hunter's husband (hereinafter "Ms. Hunter's Husband"), and an agent for Liberty Mutual Insurance. The conversation occurred one day after the accident and, during the telephone call, the following exchange occurred:

> [Liberty Mutual]: Okay. Did we get the other person's insurance information?
>
> [Ms. Hunter's Husband]: No. My wife got rushed to the emergency room. He ran. I have police reports though. They knew, they knew, I don't know if they locked him up yet, but they knew who did it. I know who did it. It's in (unintelligible) the police report. He better hope the cops get him before I do, though, that's all I can say for real.

Amended PCRA Petition, 3/17/21, at 2 (footnote omitted).

Appellant declared that the police report identified him as a suspect and he claimed that the above, after-discovered evidence "tend[s] to prove that investigators, whether wittingly or unwittingly, provided Ms. Hunter and/or her husband with the name of their prime suspect as early as one day after the accident." *Id.* at 3. Appellant surmised that Ms. Hunter could have searched for his name on social media and viewed photographs of him on the internet. Thus, according to Appellant, "[t]here can [] be no confidence that Ms. Hunter identified the person she saw crash into her rather than [Appellant], the suspect she learned about from the police crash report." *Id.* Appellant requested that the PCRA court grant him a new trial. *Id.* at 5.

Appellant filed a second amended PCRA petition on March 25, 2021. Within this petition, Appellant alleged he recently uncovered evidence that Ms.

Hunter made a claim to Shawn Fishgold's car insurance carrier, State Farm Insurance, for the bodily injury policy limits. Appellant claimed that the demand letter sent to State Farm on Ms. Hunter's behalf declared "that Ms. Hunter sustained a traumatic brain injury and relie[d] upon the discharge paperwork from [the emergency room] as proof of this diagnosis." Second Amended PCRA Petition, 3/25/21, at 1-2. Appellant further claimed that State Farm tendered the $50,000.00 policy limit to Ms. Hunter. *Id.* According to Appellant, the above evidence tends to show that Ms. Hunter had a monetary "reason[] to offer false testimony to embellish the nature of her injuries, implicate [Appellant,] and otherwise refrain from being completely honest during trial." *Id.* at 3. Appellant thus requested that the PCRA court grant him a new trial. *Id.*

On November 2, 2021, the PCRA court provided Appellant with notice that it intended to dismiss his petition in 20 days, without holding a hearing, as the issues raised in the petition were meritless. PCRA Court Notice, 11/2/21, at 1; *see also* Pa.R.Crim.P. 907(1). The PCRA court finally dismissed Appellant's petition on December 14, 2021 and Appellant filed a timely notice of appeal. Appellant numbers four claims on appeal:

> 1. Whether the PCRA court erred in dismissing [Appellant's] petition for post-conviction relief without an evidentiary hearing where [Appellant] produced credible, uncontroverted medical evidence tending to show that the prosecutor and defense counsel stipulated to injuries that the complaining witness did not in fact sustain, all of which violated [Appellant's] Sixth Amendment right to counsel and his Fourteenth Amendment right to Due Process?

- 8 -

2. Whether the PCRA court erred in dismissing [Appellant's] petition for post-conviction relief without an evidentiary hearing where [Appellant] established his right to relief under **Strickland v. Washington**, 466 U.S. 668 (1984) and **Commonwealth v. Pierce**, 527 A.2d 973 (Pa. 1987) by pleading and proving that defense counsel was ineffective insofar as he failed to retain a neurologist to ensure that he understood the medical evidence and that the medical evidence was accurately presented to the jury?

3. Whether the PCRA court erred in dismissing [Appellant's] petition for post-conviction relief as trial counsel was ineffective for failing to object to inadmissible testimony regarding the gym tags found in the vehicle driven by the suspect insofar as the testimony concerned a crucial issue in the case and violated the best evidence rule and the rule against hearsay?

4. Whether the PCRA court erred in dismissing [Appellant's] petition for post-conviction relief without an evidentiary hearing where [Appellant] uncovered and presented new evidence from insurance claims files which, if presented to the jury, would have both supported [Appellant's] defense of misidentification and called into question the veracity, sincerity and accuracy of the complaining witness' trial testimony, thereby warranting the grant of a new trial?

Appellant's Brief at 9-10.[2]

"We review a ruling by the PCRA court to determine whether it is supported by the record and is free of legal error. Our standard of review of a PCRA court's legal conclusions is *de novo*." **Commonwealth v. Cousar**, 154 A.3d 287, 296 (Pa. 2017) (citations omitted).

A PCRA petitioner is not automatically entitled to an evidentiary hearing on his petition. A PCRA petition may be dismissed without a hearing if the

---

[2] For ease of discussion, we have renumbered Appellant's claims on appeal.

PCRA court "is satisfied from [its review of the petition] that there are no genuine issues concerning any material fact and that the [petitioner] is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings." Pa.R.Crim.P. 907(1). However, when the PCRA petition raises material issues of fact, the PCRA court "shall order a hearing." Pa.R.Crim.P. 908(A)(2). Thus, "[t]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Commonwealth v. Paddy*, 15 A.3d 431, 442 (Pa. 2011) (quotation marks and citations omitted).

Within Appellant's first issue on appeal, Appellant contends he is entitled to an evidentiary hearing on his claim that "the prosecutor and defense counsel stipulated to injuries that the complaining witness did not in fact sustain," thus violating both Appellant's Fourteenth Amendment right to due process and Sixth Amendment right to counsel. Appellant's Brief at 9. We will address Appellant's two subclaims separately.

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven, specifically enumerated circumstances listed in 42 Pa.C.S.A. § 9543(a)(2). One of these statutorily enumerated circumstances is a "violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the

- 10 -

circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(i). Further, the petitioner must also plead and prove "[t]hat the allegation of error has not been . . . waived." 42 Pa.C.S.A. § 9543(a)(3). Under the PCRA, "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.A. § 9544(b).

"The Fourteenth Amendment guarantees that no state 'shall . . . deprive any person of life, liberty, or property without due process of law.'" *Commonwealth v. Fears*, 250 A.3d 1180, 1193 (Pa. 2021), *quoting* U.S. Const. XIV, Sec. 1. In opinions spanning from *Mooney v. Holohan*, 294 U.S. 103 (1935) to *Napue v. Illinois*, 360 U.S. 264 (1959), the United States Supreme Court "made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice. . . . [T]he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quotation marks and citations omitted). "Thereafter, *Brady v. Maryland*, 373 U.S. [83 (1963),] held that suppression of material evidence justifies a new trial irrespective of the good faith or bad faith of the prosecution." *Giglio*, 405 U.S. at 153.

Although it is now well settled that the Fourteenth Amendment forbids the presentation of false evidence and the concealment of exculpatory

evidence, the Pennsylvania Supreme Court has held that claims grounded in *Brady* and *Napue* are subject to waiver under the PCRA. *Commonwealth v. Cousar*, 154 A.3d 287, 301-302 (Pa. 2017) (holding: "*Brady* claims . . . may be subject to waiver" under the PCRA); *Commonwealth v. Pruitt*, 162 A.3d 394, 403-404 (Pa. 2017) (holding: under the PCRA, the petitioner waived his claims that the Commonwealth presented "false and misleading testimony" where the underlying information "was known (or, at the very least, should have been known) to [trial] counsel" and where trial counsel "could have presented at trial precisely the same challenges as [were] reflected" at the PCRA stage).

Here, Appellant claims that the Commonwealth violated his due process rights when, through a stipulation, the Commonwealth presented false evidence that Ms. Hunter's medical records indicated she suffered from "swelling in her front brain area" and "trauma to her brain." *See* Appellant's Brief at 22. Appellant's due process claim is waived under the PCRA, as he "could have raised [the claim] but failed to do so" at trial and on direct appeal. 42 Pa.C.S.A. § 9544. To be sure, Appellant's due process claim is based entirely upon a reevaluation of Ms. Hunter's medical records. Specifically, the Commonwealth presented to the jury a stipulation which said that Ms. Hunter's medical records indicated she suffered from "swelling in her front brain area" and "trauma to her brain." In fact, Ms. Hunter's medical records do not declare that she sustained those injuries. Instead, the medical records declared that Ms. Hunter suffered a "[s]oft tissue injury" to her head and was

diagnosed with: closed head injury, contusion of head, laceration, MVC (motor vehicle collision), and elevated creatine kinase. Ms. Hunter's Discharge Instructions, 1/19/16, at 1.

Ms. Hunter's medical records were available to Appellant during the entirety of the trial and on direct appeal. Therefore, to paraphrase the Pennsylvania Supreme Court, we conclude that since the underlying "information was known (or, at the very least, should have been known) to [Trial C]ounsel, [Trial Counsel] apparently could have presented at trial precisely the same challenges as are reflected in the present briefing. As such, we find the instant claim to be unpreserved in its entirety." *Pruitt*, 162 A.3d at 404.

Appellant's second subclaim contends that Trial Counsel was ineffective when he stipulated to a factually incorrect summary of Ms. Hunter's medical records.[3] Appellant's Brief at 31.

The PCRA provides an avenue for relief where the petitioner is able to plead and prove by a preponderance of the evidence the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so

---

[3] Although we conclude that Appellant's due process claim was waived under the PCRA, Appellant's ineffective assistance of counsel claim is proper in this context, as "an ineffective assistance of counsel claim is a separate legal issue distinct from the underlying substantive claim for which counsel allegedly had provided ineffective assistance." *Commonwealth v. Derk*, 913 A.2d 875, 883 n.6 (Pa. Super. 2006).

- 13 -

undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

Counsel is presumed to be effective and "the burden of demonstrating ineffectiveness rests on [A]ppellant." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010). To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that:

> (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different.

*Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003). As this Court has explained:

> A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. *See Commonwealth v. Jones*, 876 A.2d 380, 385 (Pa. 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim . . . , he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.
>
> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a

probability sufficient to undermine confidence in the outcome.

***Commonwealth v. Stewart***, 84 A.3d 701, 707 (Pa. Super. 2013) (some quotations and citations omitted). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." ***Id.***

According to Appellant, Trial Counsel was ineffective when he stipulated to a factually incorrect summary of Ms. Hunter's medical records. ***See*** Appellant's Brief at 22 and 31. Further, Appellant contends that the PCRA court erred when it dismissed his petition without granting him a hearing on this claim. ***Id.*** at 32. The Commonwealth agrees that the PCRA court erred when it refused to grant Appellant an evidentiary hearing on his ineffective assistance claim. Commonwealth's Brief at 12. We agree with Appellant and the Commonwealth and conclude that the PCRA court erred when it failed to grant Appellant an evidentiary hearing on his claim that Trial Counsel was ineffective when counsel stipulated to a factually incorrect summary of Ms. Hunter's medical records. Therefore, we vacate the PCRA court's order and remand for an evidentiary hearing on Appellant's ineffective assistance claim.

As explained above, at trial, Appellant and the Commonwealth stipulated to the following:

> the medical records indicate that Michelle Hunter was admitted to Aria Torresdale Hospital [at] 3:11 p.m. on January [19, 2016]. She received among other things a CT scan of her head where the doctors found trauma, soft tissue damage and swelling in her front brain area.

> Ms. Hunter was diagnosed with a closed head wound, a contusion to her forehead and trauma to her brain. She was discharged from the hospital that night.

N.T. Trial, 6/12/18, at 191-192.

However, and contrary to the above stipulation, Ms. Hunter's medical records do not declare that "a CT scan of [Ms. Hunter's] head" found "swelling in her front brain area" or that she was diagnosed with "trauma to her brain." *See id.* Rather, the CT scan revealed that Ms. Hunter suffered "[s]oft tissue injury" and "midline frontal soft tissue swelling" to her head. Ms. Hunter's CT Summary, 1/19/16, at 1. Further, Ms. Hunter was diagnosed with: closed head injury, contusion of head, laceration, MVC (motor vehicle collision), and elevated creatine kinase. Ms. Hunter's Discharge Instructions, 1/19/16, at 1. Moreover, as Dr. Greenwald opined:

> The stipulation regarding Ms. Hunter's medical records that was read by the prosecutor and agreed to by [Appellant's counsel] was an incorrect summary of the medical records admitted into evidence at trial. Specifically, the CT scan of the head showed soft tissue damage (swelling of the forehead), but no evidence of swelling in the frontal brain area. Additionally, the records did not reflect that Ms. Hunter was diagnosed with trauma to the brain.

Dr. Greenwald Report, 12/27/20, at 2.

Appellant's petition thus creates a genuine issue of material fact that his underlying claim – that Trial Counsel stipulated to a factually incorrect summary of Ms. Hunter's medical records – has arguable merit.

The second prong of an ineffective assistance of counsel claim asks whether counsel had a reasonable basis for his action. With respect to this

prong, Appellant pleaded facts tending to show that, as a result of the stipulation, the jury was led to believe that Ms. Hunter's injuries were more severe than they actually were. Thus, Appellant's petition creates a genuine issue of material fact as to whether Trial Counsel had a reasonable basis for entering into the stipulation.

Finally, Appellant must demonstrate that he was prejudiced by Trial Counsel's alleged errors. As to this element, we note that Appellant was convicted of aggravated assault under 18 Pa.C.S.A. § 2702(a)(1) and aggravated assault by vehicle under 75 Pa.C.S.A. § 3732.1(a). ***See*** Commonwealth's Information, 5/3/16, at 1-3; ***see also*** N.T. Trial, 6/13/18, at 86-95. Both convictions required the Commonwealth to prove that Appellant caused Ms. Hunter "serious bodily injury."[4, 5] "Serious bodily injury"

---

[4] Aggravated assault under 18 Pa.C.S.A. § 2702(a)(1) is statutorily defined as follows: "A person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). Nevertheless, at trial, the trial court instructed the jury:

> So let's start at the top. Aggravated assault, victim Michelle Hunter, causing serious bodily injury. [Appellant] is charged with this count of aggravated assault. In order to find [Appellant] guilty of this offense, you must find each of the following elements proven beyond a reasonable doubt: Number one, **that [Appellant] caused serious bodily injury**.

N.T. Trial, 6/13/18, at 86 (emphasis added).

[5] Aggravated assault by vehicle is defined in the following manner:
*(Footnote Continued Next Page)*

- 17 -

is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

As this Court has held, a bodily injury that impairs the function of the brain, such as a concussion, "is sufficient evidence of 'serious bodily injury' under 18 Pa.C.S.A. § 2301." *Commonwealth v. Santiago*, 294 A.3d 482, 486 (Pa. Super. 2023) (holding: "concussing someone during an assault is sufficient evidence of 'serious bodily injury' under 18 Pa.C.S.A. § 2301, as a matter of law"). However, we have held that a "bump on the head" is insufficient to qualify as a "serious bodily injury." *Commonwealth v. Benaglio*, 385 A.2d 544, 546 (Pa. Super. 1978) (holding: where the victim was punched once in the forehead during a robbery, resulting in a "bump on the head," the injury was insufficient to constitute "serious bodily injury" and, thus, the evidence was insufficient to prove that the defendant committed aggravated assault).

---

Any person who recklessly or with gross negligence causes serious bodily injury to another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic, except section 3802 (relating to driving under influence of alcohol or controlled substance), is guilty of aggravated assault by vehicle, a felony of the third degree when the violation is the cause of the injury.

75 Pa.C.S.A. § 3732.1(a).

Here, Appellant's petition creates a genuine issue of material fact as to whether he was prejudiced by Trial Counsel's alleged errors. As stated above, aggravated assault requires proof that, *inter alia*, Appellant either caused or attempted to cause serious bodily injury and aggravated assault by vehicle also requires proof that, *inter alia*, Appellant caused serious bodily injury. In his petition, Appellant pleaded facts tending to show that the stipulation essentially foreclosed any potential argument that Ms. Hunter did not actually suffer "serious bodily injury" in the form of the "impairment of the function of" her brain, as Trial Counsel stipulated that Ms. Hunter suffered "swelling in her front brain area" and "trauma to her brain." Certainly, during the Commonwealth's closing argument, the Commonwealth emphasized this point:

> [The Commonwealth]: So what we agree about is pretty much everything. We agree there was an accident that day. We agree the accident was caused by someone driving Mr. Fishgold's truck. We agree about the injuries and we stipulated. I'm surprised to hear [Appellant's] counsel now going back and trying to say no, it really wasn't that bad. We stipulated that she had a [] traumatic brain injury. She had swelling to the front of her brain. It was weeks before she went back to work, before she could take care of her kids, months before she could drive again. But I'll get to that.
>
> But another way of saying what we agree on is this: Whoever it was that day who drove the truck, did the two hit and runs and hit [Ms.] Hunter, whoever that was is guilty of aggravated assault, aggravated assault by vehicle and the two hit and runs. So we do agree on that.
>
> . . .

- 19 -

> So I'll end with, I got to talk to you about the law. . . . [To prove aggravated assault by vehicle, the Commonwealth has to prove] four elements. . . . Third element, that Michelle Hunter suffered serious bodily injury. Apparently, [Appellant's] counsel doesn't agree on this, which surprises me. I'll talk about that a little bit more. Suffice it to say, traumatic brain injury is a serious bodily injury.
>
> Here's the definition of serious bodily injury, just while we're on it. Serious bodily injury means any bodily injury that creates a substantial risk of death or causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ.
>
> Like, say you had brain damage. You had swollen. You weren't able to take care of your kids or drive or go to work for a while. The brain, you know, traumatic brain injury is serious bodily injury.
>
> So that's third. Check.

N.T. Trial, 6/13/18, at 45-46 and 60-61.

Therefore, we conclude that Appellant petition creates a genuine issue of material fact that Trial Counsel was ineffective when he stipulated to a factually incorrect summary of Ms. Hunter's medical records. We thus vacate the PCRA court's order and remand for an evidentiary hearing on this claim.

Appellant's remaining claims, however, do not entitle him to relief.

Within Appellant's second numbered claim on appeal, Appellant contends that Trial Counsel was "ineffective insofar as he failed to retain a neurologist to ensure that he understood the medical evidence and that the medical evidence was accurately presented to the jury." Appellant's Brief at 9. We have already concluded that the PCRA court erred when it refused to grant Appellant an evidentiary hearing on his claim that Trial Counsel was

ineffective by stipulating to a factually incorrect summary of Ms. Hunter's medical records. Essentially, Appellant's first claim embraces Trial Counsel's comprehension of Ms. Hunter's medical records and the accuracy with which those records were presented to the jury. In light of these determinations, Appellant's second numbered claim on appeal is moot.

Third, Appellant claims that Trial Counsel was ineffective for failing to object to the testimony regarding the gym tags found in the truck. According to Appellant, the testimony concerning the gym tags "violated the best evidence rule and the rule against hearsay." Appellant's Brief at 45. As the PCRA court explained, Appellant's claim is meritless:

> [Hearsay is defined as a statement that "the declarant does not make while testifying at the current trial or hearing" and "a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c).] Pa.R.E. 801(a) defines a statement as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Notably, our Courts have held that computer generated information, free from interference by any person, does not constitute a "statement," and therefore, cannot qualify as hearsay. ***Commonwealth v. Wallace***, 244 A.3d 1261, 1272 (Pa. Super. 2021) (GPS data from defendant's tracking bracelet was not hearsay). Pa.R.E. 801(b) further defines a declarant as "the **person** who made the statement." (emphasis added).
>
> In this case, Officer Patrick Owens testified that the key tags were scanned at each [fitness] establishment in front of him and the screen displayed Appellant's name. As such, there was no declarant involved, and precedent would further suggest that computer generated information of this type would not constitute a statement. As such, [Trial Counsel] cannot be ineffective for failing to object to evidence that was not hearsay.

- 21 -

Moreover, Officer [Owens'] testimony did not violate the best evidence rule. The best evidence rule is codified by Pennsylvania Rule of Evidence 1002, which provides as follows:

[An original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise.]

Pa.R.E. 1002. "Rule 1002 requires that an original writing, recording, or photograph be introduced at trial only if the proponent must prove the contents of the writing, recording, or photograph to prove the elements of its case. *Commonwealth v. Ribot*, 169 A.3d 64, 67 (Pa. Super. 2017). . . . "The best evidence rule is triggered, however, only when the contents of a writing are essential, not merely relevant, in proving a claim or defense." *Commonwealth v. Talley*, 236 A.3d 42, 62 (Pa. Super. 2020). "If the Commonwealth does not need to prove the content of the writing or recording to prove the elements of the offense charged, then the Commonwealth is not required to introduce the original writing or recording." *Commonwealth v. Dent*, 837 A.2d 571, 590 (Pa. Super. 2003).

Regarding the key tags, Officer Owens testified that when he arrived at the location, he spoke to the first driver that had been struck (Augustine Swaray) and then he ran the tag of the pick-up truck (the striking vehicle) which was unattended. He got the owner's information and sent a police car to the address associated with the tag: . . .

[Officer Owens]: From there I run the tag to the pickup truck, which is unattended, and I was advised by the driver of the . . . [car], all he could tell me that a white male twenties to thirties, white shirt, fled southbound on Torresdale. I ran the tag to the vehicle. I got the owner's information, sent a police car out to that location.

[The Commonwealth]: To the owner's house?

[Officer Owens]: To the owner's location of the pickup truck where the person had fled. He was not on location. His mother was. She had advised the police that he was

- 22 -

at the Mayfair Fitness working out, which is on Frankford [Avenue], approximately Frankford and Vista area. A marked patrol car went over there to see if the owner was there. His name was Shawn Fishgold. He was. We brought him out to the location to see if he was possibly the driver of the vehicle. He was not the driver.

[The Commonwealth]: How do you know that?

[Officer Owens]: We were able to find out he was at the gym the entire time when the accident happened. We asked him if it was his vehicle. He told us yes, that it is his truck and that the last time he had seen it, it was at, I believe, sixteen hundred Stanwood and it was parked there a few days prior and that a female by the name of Amanda had the key, the only other key to the vehicle.

[The Commonwealth]: Okay. All right. So he IDs his truck. Does he ID anything else that's on the scene?

[Officer Owens]: There was an ignition key to the vehicle, which he identified as his, and on that key ring there was a green climbing hook, I believe three Aquatic Fitness Center key tags, a Mayfair Fitness key tag and a Modell's key tag.

. . .

[The Commonwealth]: So those keys, so you go back to Mr. Fishgold. You said that he identified the ignition key for the Ford, but what about the rest of the items?

[Officer Owens]: They said they were not his. That's what he said.

. . .

[The Commonwealth]: At that point what do you do with those items? Well, what do you do in general?

[Officer Owens]: Well, tow comes on location, removes the vehicle, which Mr. Fishgold gave permission to due to the heavy damage to the vehicle. He actually signed a tow slip for that. The scene was cleared. Due to the fact that

- 23 -

the gentlemen was just at Mayfair Fitness, I took him back to Mayfair Fitness. There was a key tag for Mayfair Fitness so I had the gym scan that tag. That came back to a Mr. Michael McDowell.

[The Commonwealth]: And so when you got there, how is it that you find that information out?

[Officer Owens]: I gave it to the clerk. I let them know could you check to see whose key tag this is. It was found in a vehicle of someone who fled the scene. They scanned it in front of me and I looked at the screen and saw Michael McDowell on there.

[The Commonwealth]: What do you do next?

[Officer Owens]: I then have to go up to Aria Torresdale to check on the female that was taken to the hospital before my arrival. I checked on her condition. She was stable at the time. The Aquatic Fitness Center is actually maybe five minutes away from that hospital so I took, I went over there to have them scan the three Aquatic Center keys and all three of those keys came up to a Mr. Michael McDowell.

[The Commonwealth]: Same procedure in terms of scanning and seeing it on the screen?

[Officer Owens]: Yes. When you walked up to it, it was a round desk and you could see the computer screen. They scanned all three and all three came to Michael McDowell.

. . .

[N.T. Trial, 6/12/18, at 39-45].

Despite Appellant's argument to the contrary, the best evidence rule is not applicable to this case. Testimony concerning the gym tags was presented to demonstrate that Appellant had access to the pickup truck, not to conclusively establish any element of the Commonwealth's case. *See Commonwealth v. Townsend*, 747 A.2d 376, 380 (Pa. Super. 2000) (no violation of best evidence rule occurred where trial court allowed detective to testify regarding

content of defendant's written confession, even though written confession was not admitted into evidence; content of confession made persuasive evidence for Commonwealth's case but was not necessary to establish elements of crimes of burglary and assault, which had no elements requiring proof of content of confession or any other writing). Accordingly, trial counsel was not ineffective [for failing] to make an objection based on the best evidence rule.

PCRA Court Opinion, 5/12/22, at 21-25.

We agree with the PCRA court's thorough analysis and conclusion. Therefore, we conclude that Appellant's third numbered claim on appeal fails.

Finally, Appellant claims that he is entitled to relief based upon after-discovered evidence. Appellant's Brief at 49.

First, according to Appellant, after he filed his initial PCRA petition, he received a recorded telephone conversation between Ms. Hunter's Husband and an agent for Liberty Mutual Insurance. The conversation occurred one day after the accident and, during the telephone call, the following exchange occurred:

> [Liberty Mutual]: Okay. Did we get the other person's insurance information?
>
> [Ms. Hunter's Husband]: No. My wife got rushed to the emergency room. He ran. I have police reports though. They knew, they knew, I don't know if they locked him up yet, but they knew who did it. I know who did it. It's in (unintelligible) the police report. He better hope the cops get him before I do, though, that's all I can say for real.

Amended PCRA Petition, 3/17/21, at 2 (footnote omitted); Appellant's Brief at 50.

- 25 -

According to Appellant, this after-discovered evidence entitles him to a new trial because:

> The files received from Liberty Mutual Insurance tend to prove that investigators, whether wittingly or unwittingly, provided Ms. Hunter and/or her husband with the name of their prime suspect as early as one day after the accident. . . .
>
> [W]ith the advent of social media and the internet, locating a picture or pictures of [Appellant] prior to the January 27th lineup would have been easy for Ms. Hunter. There can simply be no confidence that Ms. Hunter identified the person she saw crash into her rather than [Appellant], the suspect she learned about from the police crash report.

Appellant's Brief at 51.

Further, Appellant claims, after he filed his PCRA petition, he learned that Ms. Hunter received the bodily injury policy limits from Mr. Fishgold's insurance carrier. Appellant claims that this after-discovered evidence entitles him to a new trial because it demonstrates that Ms. Hunter had a monetary "reason[] to offer false testimony and embellish the nature of her injuries." *Id.* at 56.

Appellant's after-discovered evidence claims fails.

As our Supreme Court has explained:

> in order to be granted a new trial based on after-discovered evidence, appellant must show the evidence: 1) has been discovered after trial and could not have been obtained at or prior to the conclusion of trial by the exercise of reasonable diligence; 2) is not merely corroborative or cumulative; 3) will not be used solely to impeach a witness's credibility; and 4) is of such a nature and character that a different verdict will likely result if a new trial is granted.

- 26 -

***Commonwealth v. Cousar***, 154 A.3d 287, 311 (Pa. 2017).

Appellant's claims on appeal immediately fail, as Appellant admits that he would only use the above evidence to impeach Ms. Hunter's credibility regarding her identification of Appellant and the extent of her injuries. ***See*** Appellant's Brief at 52 (surmising that Ms. Hunter might have falsely identified Appellant as her assailant because she located Appellant's photograph on the internet); 53 (declaring that the evidence entitles Appellant to a new trial because "[t]he jury was unable to properly evaluate whether Ms. Hunter should or should not be believed"); 54 (declaring that "this new evidence . . . calls into serious question whether Ms. Hunter gave truthful, accurate testimony); 55 (declaring that the evidence entitles Appellant to a new trial "so that he can fully . . . probe Ms. Hunter's motive and/or bias as a witness"); 56 (declaring: "[a]s a result of this newly discovered evidence, we now know that Ms. Hunter had [a monetary] reason[] to offer false testimony to embellish the nature of her injuries"). Appellant's final claim on appeal thus fails.

In conclusion, we vacate the PCRA court's order and remand for an evidentiary hearing on whether Trial Counsel was ineffective when he stipulated to a factually incorrect summary of Ms. Hunter's medical records. Appellant's remaining claims fail.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>October 18, 2023</u>